## Back's Guardian et al. v. Bardo et al.

(Decided May 6, 1930.)

BARBOUR & BASSMANN for appellants.

MATT HEROLD, JOHN W. HEUVER and HUBBARD SCHWARTZ for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Peter N. Bardo, a resident of Campbell county, died March 19, 1923, leaving a will which was duly probated

in the Campbell county court. Omitting the immaterial portions, the will reads as follows:

"Second: I devise and bequeath to my sister, Elizabeth Pratt, the sum of one Thousand dollars ($1,000.00).

"Third: I devise and bequeath to my respective grandchildren, Mary Evelyn Wirthlin, the sum of Two thousand ($2,000.00) Dollars, to Edward Wirthlin, Jr., the sum of two thousand ($2,000.00) Dollars, to Jos. Humbrecht, Jr., the sum of One hundred dollars ($100.00) to Carl Humbrecht the sum of one hundred dollars ($100.00), to Joseph Back, Jr., the sum of Two thousand Dollars ($2,000.00), to Gertrude Back the sum of Two Thousand dollars ($2,000.00), and to Mary Frances Back the sum of two thousand ($2,000.00) Dollars, to be paid to them by my executors as they shall attain unto the age of twenty-one years respectively.

"Fourth: After the payment of the claims provided for in the first and second items, above enumerated, and suitable provision made for the payment of the respective sums designated to my grandchildren as these shall mature, I desire that all my remaining estate, real, personal and mixed shall be inventoried, appraised and divided into five (5) equal parts, one of these parts to be given to each of my living children to-wit: George Bardo, Peter N. Bardo, Jr., Thos. Bardo, Stella O'Neill and Alice Lux.

"Fifth: In the event of the death of any one of the legatees herein provided for such undistributed part of my estate shall revert to my estate for the benefit of my then living heirs to be equally distributed.

"Sixth: In making the distribution of my estate my executors shall select three (3) disinterested men to appraise all my estate real, personal and mixed, and the valuation placed by them, upon the property shall be binding upon all my children and grandchildren and shall be used by my executors in making the division, but it is my will and desire that my farm of 117 acres in Cold Springs, Campbell County, Kentucky, shall be assigned to my son, Thos Bardo, as part of his share of my

estate. After the division is made my Executors by proper conveyance and transfers shall convey and transfer to each devisee the portion allowed to him or her, provided however that any shares to be held by them in trust, shall not be conveyed to transferred until the expiration of the time of said trust.

"Seventh: I nominate and appoint my two sons, George Bardo and Peter N. Bardo, Jr., as Executors of this Will and Testament and request that no bond be required of them either as executors or as trustees."

The testator left surviving one son, two daughters, and numerous grandchildren, the children of deceased children.

The will, though contested by certain grandchildren, was sustained, and no appeal has ever been prosecuted from the judgment.

Shortly thereafter George J. Bardo, as executor, and in his individual capacity, together with his wife, filed two actions in the Campbell circuit court; one to sell certain real estate in which the testator had an undivided interest, and the other for the construction of the will and the guidance of the court in the distribution of the estate. In the former action the land was sold and the proceeds distributed by the master commissioner. Later on George J. Bardo, as executor, and in his individual capacity, together with his wife, filed in the action for the construction of the will an amended petition asking the partition of certain lands in which the testator and Clem R. Fennell owned undivided interests. By the amendment all the testators, heirs and devisees were again brought before the court, either by personal or constructive service. Commissioners were appointed who divided the land, reported to the court, and, no exceptions having been filed, the report was confirmed by a nunc pro tunc order. Thereafter, the commissioner appointed by the court conveyed to the testator's estate and to Fennell, the other joint owner, the land allotted to each. Later on the court entered a judgment construing the will and holding that that portion of the estate devised and bequeathed to Peter N. Bardo, Jr., who died before testator, passed to the testator's heirs at law per capita. It was also held that it was the duty of the appraisers to value the estate, and of the executor to make a distri-

bution. After this decision the executor appointed three disinterested men to appraise all the property, both real and personal. This they did and filed their report. The executor then allotted all the real estate to the four surviving children, and a sufficient amount of personalty to make up their respective shares, and gave to each of the other 17 heirs personal property consisting of bonds and cash. He then filed his report of distribution and settlement with the Campbell county court, and the report was confirmed.

Some time later the heirs who received real estate contracted to sell a portion of it, and the attorney for the purchaser was doubtful of the title because of certain alleged irregularities in the proceeding, to which he referred in his report to his client. Thereupon Thomas Bardo, George J. Bardo, Stella O'Neill and Alice Lux, brought this action under the Declaratory Judgment Act asking the court to determine the following questions:

"1. Whether the devise or legacy to Peter N. Bardo, Jr., lapsed at his death under Section 5 of the last will of his father, the testator.

"2. Whether, no certified copy of said will being filed with the petition in case No. 23337, the will being set out in full in the petition, and no certified copy of the appointment and qualification of the guardians of the children of Peter N. Bardo, deceased, having been filed, until filed with the motion to enter the nunc pro tunc order confirming the report of the commissioners on partition, made the judgment erroneous.

"3. Whether the filing of the amendment to the petition asking for a partition of the land, known as the 'Edgewood' subdivision, between Clem R. Fennell and the estate of Peter N. Bardo, deceased, and asking authority to make a deed for Lot 'H' described in the petition was such a misjoinder as to make the proceedings for partition and the decree or direction to the executor to execute a deed conveying said Lot 'H' to defendant, Clem R. Fennell, erroneous.

"4. Whether the executor had power to divide the decedent's estate by allotting the real estate and shares of stock to the four devisees or legatees, towit: Thomas Bardo, George J. Bardo, Stella O'Neill

and Alice Lux, and allotting to the other thirteen distributees or beneficiaries bonds and money, $2,074.54 each, or whether under the will he should have conveyed to each of the distributees a proportionate interest in the land and given to each a proportionate interest in the bonds, money and stocks.

"5. Whether it was necessary to allege in the amended petition praying for a partition of the land, that Peter N. Bardo's devisees or legatees were the owners of 11/18 interest in the land, the amended petition alleging that Peter N. Bardo died the owner in fee simple and in possession of said undivided 11/18 interest and the petition, to which the above amendment was filed, pleading the will in full.

"6. Whether the executor, acting as such and individually could institute the proceedings for a partition, and whether it was necessary to again name the infant defendants as parties in the amended petition when they were named as such in the original petition, and all were before the court on said amendment.

"7. Whether plaintiffs, under the deeds of conveyance to them from the executor can convey a good title to the real estate therein described, and for such other and further relief to which plaintiffs may appear to be entitled in equity."

The court answered all the questions in such a way as to uphold the proceedings theretofore had, and adjudged that the devisees who were allotted real estate acquired a good title under the deeds from the executor, and could convey a good title to their respective portions. From that judgment this appeal is prosecuted by certain adults and infants.

It will be observed that the questions propounded relate to the construction of the will and the regularity of the partition proceedings in the prior action brought for that purpose, and to the proper distribution of the estate. In the action for the construction of the will, and the partitioning of the real estate, the will was construed and the land was partitioned. Thereafter the executor filed his report of distribution and settlement in the Campbell county court and the report was confirmed. As the court had jurisdiction of the subject matter and the parties in each proceeding, the judgment rendered by

each court is binding on the parties so long as it remains in force. Were we to say that the construction placed on the will was proper, and that the partition proceedings were regular, it would add nothing to the effect of the judgment. Were we to say that the will was improperly construed, or that the partition proceedings were irregular, it would not affect the judgment. If the will was improperly construed, or there was error in the partition proceedings, or in the distribution of the estate, the only way to raise the questions was by proper proceedings below, or by appeal.

Under the Code an adult party may appeal at any time within two years next after the right to appeal first accrued, while an infant may appeal at any time within one year next after the removal of his disability. Section 745, Civil Code of Practice. Under the Declaratory Judgment Act (Acts 1922, c. 83) the appeal must be prosecuted within 60 days after the judgment, order, or decree has become final, unless the time has been extended by the court, but in no event in courts of continuous session beyond 120 days from the time such judgment, order, or decree becomes final, and in other courts beyond a day in the succeeding term. Were we to hold that a proceeding under the Declaratory Judgment Act would lie for the purpose of determining whether a prior judgment in an action or proceeding between the same parties was proper, or the proceedings leading up to the judgment were regular, it would result in ignoring the prior judgment and in depriving the parties of the right of appeal within the time prescribed by the Code. The purpose of the Declaratory Judgment Act was to have a declaration of rights not theretofore determined, and not to determine whether rights theretofore adjudicated had been properly adjudicated. In other words, it was never intended as a substitute for a new trial, or other steps that the Code requires to be taken in the same action, or for an appeal to this court. In the circumstances the court below should have dismissed the proceeding and not have proceeded to adjudicate the rights of the parties.

Judgment reversed, and cause remanded, with directions to dismiss the petition.