STATE ex Rel. MUNGAS et al., Relators, *v.* DISTRICT COURT et al., Respondents.

(No. 7,579.)

(Submitted June 10, 1936. Decided June 26, 1936.)

[59 Pac. (2d) 71.]

534

*Mr. S. P. Wilson,* for Relators, submitted a brief and argued the cause orally.

*Mr. W. E. Keeley* and *Mr. J. J. McDonald,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is an application for a writ of supervisory control to review a judgment of the district court of Granite county finding the relators guilty of contempt of a judgment and decree of the same court adjudicating certain water rights and enjoining interference with those rights.

The judgment in the water right suit was before this court on appeal. (*Rock Creek Ditch & Flume Co.* v. *Miller*, 93 Mont. 248, 17 Pac. (2d) 1074, 1078, 89 A. L. R. 200.) The relators are the owners of lands in Sec. 12, T. 5 N., R. 15 W.—some 250 acres of which are irrigated. The Rock Creek Ditch & Flume Company is a corporation of which the relators are the majority stockholders. It diverts water from the east fork of Rock Creek, and delivers it to the relators for the irrigation of their lands in section 12. The canal owned by the company was constructed at great expense. The defendants Miller, in the original water right suit, were adjudged to have an appropriation out of Wyman Creek. A dry draw passes through the lands of the relators in section 12, which is, according to all the testimony, a tributary of Wyman Creek, Any water which may chance to run in this draw flows into Wyman Creek above the point or points of diversion of the Miller rights. One Hickey, also a stockholder in the ditch company, owns the land in section 7 which adjoins section 12. The watershed of the east fork of Rock Creek and that of Wyman Creek are separate and distinct from each other. Since the entry of the decree in the water right suit, the relators have verbally leased from Hickey lands in section 7, and irrigate thereon a tract of alfalfa, approximately 15 acres in area, and such additional pasture land as the water is available to supply. Their method of irrigating the various lands is that the water diverted from the east fork of Rock Creek is delivered to them from the ditch company at approximately the corner of the section; by means of laterals they irrigate these lands in section 12. As a result of the irrigation, water collects in what we have referred to as a dry·draw, which, if

permitted, flows into Wyman Creek and is available for use under the Miller rights. The relators have a number of ditches leading from the draw, some of which are used to again spread water over certain portions of their land in section 12. The owners of the Miller rights have no objection to this procedure. However, down near the boundary line of the relators' land in section 12, they maintain two dams from which they make diversion and carry the water thus obtained through a ditch and utilize the same for irrigation of the alfalfa and pasture lands in section 7, mentioned supra. The point at which these diversions are made, and where the dams are located, is so situated that it is impossible for the relators to utilize the water which is collected there for irrigation on their lands in section 12. There is some slight testimony in the record to the effect that in this so-called dry draw two springs are found which contribute to the flow in the draw; however, the evidence is almost overwhelming to the effect that the flow of these springs is wholly insufficient to cause water to flow in the draw for any considerable distance. The waters which collect in the draw are not supplied by any direct ditch but accumulate therein solely as the result of the irrigation.

The stockholders were not named as parties to the original suit, but the injunctive portion of the decree runs against the stockholders without naming them. The decree adjudicates the water of Wyman Creek and its tributaries; however, this draw is not named or mentioned, aside from the general provisions with reference to the tributaries of the creek. The relators claim no appropriation of the waters of Wyman Creek as such. They contend that upon the facts they are entitled to have the judgment finding them guilty of contempt annulled, their contentions being (1) that they were not parties nor successors in interest of parties to the ditch company which was a party to the decree, although they were then stockholders of the company, and there has been no change in their position since the entry of the decree; (2) that they brought the water involved from the east fork of Rock Creek, an independent source of supply, and which would not naturally have been

available as a part of the waters of Wyman Creek for the irrigation of the Miller land; and (3) that such water having been brought to the land of the relators, was used by them thereon and recaptured after the first use without the same having passed across the boundaries of their land.

Admittedly, the relators were not parties to the proceeding in which the decree was entered. The corporation which diverts the water and delivers it to the relators for their use, as we understand the record, irrigates no land of its own and owns no land which it has attempted to irrigate. Generally, one who is not a party to a decree, or a successor in interest of some party to a decree to a water right suit, and not connected with the litigation or with the parties thereto, may not be punished for contempt of the provisions of the decree. (*State ex rel. Reeder* v. *District Court*, 100 Mont. 376, 47 Pac. (2d) 653; *State ex rel. Pew* v. *District Court*, 34 Mont. 233, 85 Pac. 525.) A stockholder claiming a right through the corporation is undoubtedly bound by any judgment for or against the corporation with respect to any other person privy to or legally affected by such judgment. (1 Freeman on Judgments, 5th ed., 1104; *Croke* v. *Farmers' Highline Canal & Reservoir Co.*, 71 Colo. 514, 208 Pac. 466.)

The ditch company was a party to the decree. The relator's right to use the water delivered to them by the ditch company is the result of contractual relations between the relators and the ditch company. Their right to use it is as successor in interest to the ditch company. Furthermore, the relators were intimately connected with the litigation in question. Much of the testimony offered on behalf of the ditch company was produced by the relators themselves; some of them were officers of the corporation, and to this extent they were connected with the parties to the litigation as referred to in *State ex rel. Reeder* v. *District Court*, supra. Accordingly, we hold that relators' first contention is without merit.

It is argued that the issues raised by the pleadings in the original suit were insufficient to warrant the court in the original decree in any manner finding and making an

adjudication with reference to the waters in the draw, and therefore any adjudication found in that decree relative thereto cannot be *res judicata* as against the parties to the suit. The issues raised by the pleadings are not altogether controlling upon the scope of the judgment. The parties to a judgment are concluded upon the issues raised in the pleadings and upon any issues which were actually litigated on the trial of the case. (*Brennan* v. *Jones,* 101 Mont. 417, 55 Pac. (2d) 697, 702.) The trial court by its judgment and decree did determine that the Millers had certain rights to the waters of Wyman Creek and its tributaries and that the plaintiff had no rights therein.

The other two principal contentions of the relators will be discussed together. In the case of *Brennan* v. *Jones,* supra, this court said: ''We are committed to the rule that the appropriator of a water right does not own the water, but has the ownership in its use only. (*Creek* v. *Bozeman Water Works Co.,* 15 Mont. 121, 38 Pac. 459; *Allen* v. *Petrick,* 69 Mont. 373, 222 Pac. 451; *Verwolf* v. *Low Line Irr. Co.,* 70 Mont. 570, 227 Pac. 68; *Tucker* v. *Missoula Light & Ry. Co.,* 77 Mont. 91, 250 Pac. 11; *Maclay* v. *Missoula Irr. Dist.,* 90 Mont. 344, 3 Pac. (2d) 286; *Rock Creek Ditch & Flume Co.* v. *Miller,* 93 Mont. 248, 17 Pac. (2d) 1074, 89 A. L. R. 200).'' Accordingly, the relators do not own the corpus of the water, but only the right to use it.

Much was said in the opinion of this court in the case of *Rock Creek Ditch & Flume Co.* v. *Miller,* above cited, which we think is pertinent here. The contention was there made that certain waters were developed water, and the same thought pervades the argument of counsel for relators in this proceeding. It was there said: ''One cannot be said to have *developed* water who has diverted it from a running stream and has conveyed it elsewhere. The idea of developed water connotes obtaining subsurface waters which have not theretofore been available.'' After further discussion of the subject of developed water, the court there made the following observation: ''Nothing we have said affects the right of one to employ

a natural channel for the conveyance of water which one is entitled to use. Had plaintiff collected from the Mungas lands waters which did not form a part of the sources of Wyman Creek, and deposited the collected volume in the channel of that stream, plaintiff could have reclaimed the water so collected therefrom, if, in so doing, the rights of the prior appropriators were not diminished in quantity nor deteriorated in quality. (Sec. 7096, Rev. Codes 1921.) But by no stretch of construction can this section be held to contemplate the right of one to take from the flow of a stream an increase caused solely by percolation resulting from irrigation upon adjacent lands.''

In the case of *Popham* v. *Holloron,* 84 Mont. 442, 275 Pac. 1099, where as the result of the irrigation of adjoining lands and the seepage from a certain irrigation canal, waters commenced flowing in an otherwise dry gulch, after a careful and extended review of the authorities, it was held by this court that waste, seepage, or percolating water so flowing in such a gulch became a watercourse and was the subject of appropriation. We expressly approved what was there said on this subject in the case of *Wills* v. *Morris,* 100 Mont. 514, 50 Pac. (2d) 862. In the case of *Rock Creek Ditch & Flume Co.* v. *Miller,* supra, it was said: ''Where vagrant, fugitive waters have reached a natural channel, and thus have lost 'their original character as seepage, percolating, surface, or waste waters,' they serve to constitute a part of a water course, and are subject to appropriation,'' citing *Popham* v. *Holloron,* supra, and other authorities in support thereof. In the same case it was further said: ''One feature of the case of *Galiger* v. *McNulty,* 80 Mont. 339, 260 Pac. 401, 406, bears an analogy to this. There the waters of Rams Horn Creek had been conducted across the ridge into Bivens Creek where they were used for placer mining, after which they were released. The owners of the right to use the water for placer mining purposes assumed to sell them for irrigation. This court, speaking through Judge Poorman, said that after the owners of the mining rights had used the waters for placer mining purposes

and the water had drained below their lands, their control over it ceased: 'It had subserved the purpose of their appropriation, and, as it could not drain back into the stream from which it was taken, it became waste, fugitive, and vagrant water and subject to be treated as such, and the appropriators had no longer any jurisdiction over it or ownership in it. They did not own the corpus of the water; hence they had nothing to sell, and their attempted sale of the water or the right to use the same was wholly void.' ''

The evidence is conclusive that the draw heretofore mentioned is a tributary of Wyman Creek. The court in the original suit adjudged that the Millers had certain rights in the waters of that creek and its tributaries, and hence the company's successors in interest were without right to the waters of that creek. The stockholders of the corporation plaintiff in that action were expressly enjoined from interfering with those rights. The waters which the relators are utilizing in section 7 have become, under the authorities cited supra, waters flowing in a watercourse, although it is true that the relators and the ditch company have brought these waters originally from another watershed, but for us to hold that they may devote them to the use of irrigating section 7 would be contrary to the holding of this court in the *Galiger-McNulty Case,* supra, and approved in the case of *Rock Creek Ditch & Flume Co.* v. *Miller,* supra, unless we were to make a distinction between the case of *Galiger* v. *McNulty* and this one. There it is said that where water was brought from an outside watershed into another and used for the purpose for which it was brought, thereafter this water might not be sold to another, upon the theory that the corpus of the water did not belong to the first user and after he had completed his use he must permit it to continue down the watercourse. Here the relators are not selling the water but propose to devote it to another and additional use. We are unable to draw any real distinction between the two cases. If the appropriator may not sell the water remaining after it has served its intended use or can no longer be devoted to that purpose,

then he may not devote it to an entirely new, distinct, and independent use.

Accordingly, the motion to quash is sustained and the proceeding dismissed.

ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent, did not hear the argument and takes no part in the foregoing decision.