PERKINS, APPELLANT, *v.* KRAMER ET AL., RESPONDENTS.

No. 8767.

Submitted January 27, 1948.   Decided June 16, 1948.

198 Pac. (2d) 475.

Mr. S. P. Wilson, of Deer Lodge, for appellant. Mr. Wilson argued the cause orally.

Mr. W. E. Keeley, Mr. Maurice J. MacCormick, and Mr. Joseph A. McElwain, all of Deer Lodge, for respondents. Mr. Keeley and Mr. McElwain argued the cause orally.

Mr. J. B. C. Knight, of Anaconda, and Mr. Fred W. Schmitz, of Townsend, amici curiae on petition for rehearing only.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal from a judgment of dismissal with costs to defendants entered after the defendants' demurrer to plaintiff's complaint was sustained and after plaintiff elected to stand upon his complaint. The complaint asks for a declaratory judgment and for relief from the judgment entered in the district court of Powell county in cause No. 2839 after the decision of this court on the appeal reported in Woodward v. Perkins, 116 Mont. 46, 147 Pac. (2d) 1016, that defendants be restrained from interfering with plaintiff in pursuing the relief here sought.

In substance the complaint alleges that plaintiff owns lands in the Dempsey Creek area in Powell county on which there are depressions or "pot holes" forming natural reservoirs holding water for long periods of time but which eventually escapes through the porous gravelly soil to the bottom of a plateau where it can be picked up in drains and measured in amount and returned to the stream to be recaptured and used for irrigation; that beginning in 1908 and continuing to 1939 plaintiff diverted waters from the upper reaches of Dempsey Creek during periods when the water would not be applied to any beneficial use by any appropriator but which would otherwise run to waste and flowed such water into the "pot holes" by means of ditches; that as it seeped out of the "pot holes" to the foot of the plateau it was picked up in drains and used by plaintiff for irrigation purposes; that had plaintiff not thus captured the water it would have run to waste into Deer Lodge river without anyone having beneficial use thereof; that the issue in cause No. 2839 was whether the waters picked up in the drains at the foot of the plateau were the same waters which plaintiff diverted from Dempsey Creek and transported into the "pot holes," as claimed by this plaintiff in his cross-complaint in that action; that the district court in cause No. 2839 held in favor of this plaintiff, defendant in that action, but on appeal (Woodward v. Perkins, 116 Mont. 46, 147 Pac. (2d) 1016) this court reversed the trial court and held that plaintiff failed to submit sufficient proof

to substantiate his claim that the waters picked up in the drains were the same waters as those put in the "pot holes" and that the proof was too speculative. The judgment was reversed and the cause remanded with instruction to enter a decree for plaintiff (defendant here) and restraining this plaintiff from asserting any claim of right based upon his cross-complaint.

Plaintiff here alleges in his complaint that the judgment entered by the trial court after remittitur from this court was too broad in that it permanently restrains him from using any of the drains to collect water and from doing any of the things complained of in the complaint in that action and in that it orders all waters seeping or escaping from the pot holes shall be distributed to and among the water users of and from Dempsey Creek and in that it perpetually restrains plaintiff here from asserting any claim of right based upon his cross-complaint in action No. 2839.

Plaintiff alleges that since the decree was entered in the district court on December 30, 1944, he has not stored any waters in the "pot holes" and in consequence there has been no water seeping into the drains and that the waters which he would have run into the "pot holes" has been permitted to run to waste which were it not for the restraining order he would have put to a beneficial use. He alleges that the reason there is not now any water at the foot of the plateau to be picked up in the drains is that he ceased to run water into the "pot holes" and that such water which he formerly placed in the "pot holes" now runs to waste. He alleges that he is able now to furnish demonstrative proof that the waters picked up in the drains was water placed in the "pot holes," but that he is prevented from making further experiments by the restraining order in question.

Defendants contend that plaintiff is now precluded from maintaining this action because of the holding in the case of Woodward v. Perkins, Mont., 171 Pac. (2d) 997. That was an appeal from the judgment entered in the trial court after re-

versal of the case by this court in the opinion reported in 116 Mont. 46, 147 Pac. (2d) 1016.

It is true that the question there presented is the same as the question here presented. But the court did not in that opinion preclude plaintiff from relief. True two members of the court thought he was not entitled to any relief. Two thought he was entitled to relief. The fifth member of the court, whose opinion was necessary to constitute a majority of the court, had this to say [171 Pac. (2d) 1005]:

"JUSTICE CHEADLE (concurring).

"I concur in the result arrived at by the majority, because I feel that there must be an eventual end to litigation, and that whether the decision of this court, reported in 147 Pac. (2d) 1016, was correct or otherwise, so far as this court is now concerned the matter is res judicata. Should changed conditions justify a modification of the decree herein, any such modification, I feel, must be after appropriate and proper proceedings in the court of original jurisdiction. Whether decrees in water right cases as between the parties must be regarded as forever conclusive, regardless of change in conditions subsequent to entry of the decree, presents an interesting and important legal question, properly determinable by a court of original jurisdiction. This court's investigation of the original case was confined to the record on appeal, and we now have no authority to reconsider the matter on facts subsequently discovered.

"I feel also, under the circumstances of this case, that should the appellant here consider that the judgment of the trial court, after remittitur, is not in accord with the decision of this court, his recourse is by appropriate original proceeding in this court." 171 Pac. (2d) 997, 1005.

Perkins then started an original proceeding in this court for a writ of supervisory control. The alternative writ was denied without opinion by a three to two order, being case No. 8701. He thereupon brought this proceeding. He has not yet had a judicial determination by a majority of this court whether the judgment of the trial court in cause No. 2839 after remittitur,

is in accord with the decision of this court. Thus far plaintiff has been deprived of relief not on the merits of his application but because he had chosen the wrong remedy.

The criticism applied to the Illinois procedure by the special concurring opinion of Mr. Justice Rutledge joined in by Mr. Justice Douglas and Mr. Justice Murphy in Marino v. Ragen, 332 U. S. 562, 68 S. Ct. 240, 243, 92 L. Ed. 170, might well be applied to the procedure in this state as applied in this case.

In that case Mr. Justice Rutledge in speaking of the offered remedies in that state said, "* * * it offers too many, and makes them so intricate and ineffective that in practical effect they amount to none. The possibility of securing effective determination on the merits is substantially foreclosed by the probability, indeed the all but mathematical certainty, that the case will go off on the procedural ruling that the wrong one of several possible remedies has been followed." And again he said that the confession of error leads to the conclusion that "the Illinois procedural labyrinth is made up entirely of blind alleys."

The majority of the court take the view that the only proper judgment for this court to have ordered entered in cause No. 2839 was one ordering a new trial (sec. 9397, subd. 6) or for a nonsuit as to the cross-complaint therein.

A defendant who files a cross-complaint becomes the plaintiff ▮ with reference to the relief demanded in the cross-complaint (17 Am. Jur., p. 63), and failing to submit sufficient proof, a nonsuit as to the cross-complaint is proper but this would not bar another action for the same relief. 17 Am. Jur., p. 98, and see secs. 9317 and 9320. Rev. Codes.

It is of course elementary that a natural depression may be ▮ utilized as a reservoir if no one is injured thereby. Larimer County Reservoir Co. v. People, 8 Colo. 614, 9 Pac. 794.

It is in the public interest that all land in the state susceptible ▮ to irrigation should be irrigated. Allen v. Petrick, 69 Mont. 373, 222 Pac. 451. If plaintiff can prove his allegations he can show that by his system of storing water he can irrigate some

of his land with waters which otherwise run to waste and without injury to anyone.

The doctrine of res judicata, if applicable, does not prevent █ the court from correcting manifest error in its former judgment. Thus in Cluff v. Day, 141 N. Y. 580, 36 N. E. 182, 183, the court said: "There is no iron rule which precludes a court from correcting a manifest error in its former judgment, or which requires it to adhere to an unsound declaration of the law. It may, for cogent reasons, reverse or qualify a prior decision, even in the same case. But the cases in which this will be done are exceptional, and the power should be sparingly exercised."

When the prior decision is by a divided court, as here, (116 Mont. 46, 147 Pac. (2d) 1016 and 171 Pac. (2d) 997, being both by divided courts) the court will the more readily depart from it, if erroneous. Johnson v. Cadillac Motor Car Co., 2 cir., 261 F. 878, 8 A. L. R. 1023 and note on page 1031.

The court erred in sustaining the demurrer to the complaint. If the allegations of the complaint can be sustained by proof then the restraining order as it now stands works a gross injustice on plaintiff and helps no one.

The judgment is reversed and the cause is remanded with directions to set aside the order sustaining the demurrer and to enter an order overruling it and allowing defendants a reasonable time to further plead to the complaint.

Associate Justices Choate, Gibson, and Metcalf concur.

MR. CHIEF JUSTICE ADAIR (dissenting).

This same matter and controversy involving the same parties was before the district court of Powell county in district court cause No. 2839 therein commenced July 12, 1939. It was likewise before this court on appeal in this court's case No. 8405, wherein by decision and final judgment pronounced April 15, 1944, this court directly adjudged the issues both of fact and of law, against the defendant and cross-complainant John E. Perkins, and in favor of plaintiffs, Thomas E. Woodward, W. P. John-

son, Dempsey Ranch Co., a corporation, Pacific Normandin, Max Kramer, Lillian Quinlan as executrix of the estate of Joseph Quinlan, Harvey F. Eliason, E. P. Johnson, and Leo Jacobsen, each of said plaintiffs being owners of land lying within the water shed of Dempsey Creek and entitled to the use of the waters thereof pursuant to the terms of a decree and final judgment theretofore made and entered August 25, 1892, in said district court in its cause No. 404.

On April 24, 1944, Perkins petitioned the court for a rehearing in case No. 8405, which petition was by the court denied on May 5, 1944, on which date remittitur issued. Upon the issuance of such remittitur this court lost jurisdiction of the cause and its decision and judgment therein became, was, and is final. See Woodward et al. v. Perkins et al., No. 8405, 116 Mont. 46, 147 Pac. (2d) 1016.

The majority opinion in the instant case, No. 8767, declines to either recognize or enforce this court's judgment in case No. 8405 or to consider said final judgment as conclusive as between the parties and their successors in interest, or to apply to it the doctrine of res judicata and it sanctions and approves a relitigation of the whole controversy, denying the owners and holders of the decreed water rights in Dempsey Creek all the relief and benefits directly adjudged in this court's decision and final judgment of April 15, 1944, in case No. 8405, supra.

*The Facts.* John E. Perkins, the appellant in the instant case, owns certain non-irrigated, rough land situate near the source and within the water shed of Dempsey Creek, an adjudicated stream in Powell county, Montana. On such lands are found certain seepage and percolating waters which are neither used nor needed on the lands on which they rise. Appellant has dug certain drain ditches whereby he has intercepted, collected and measured these seepage waters as they drain into the stream. He then proceeds downstream to various lower ditches through which he takes from the creek quantities of water equal to the seepage water measured near the head of the stream, less allowance for evaporation and waste, and such waters so taken from

the creek he uses for irrigating his farm lands further downstream, being other and different lands than the upstream lands on which the seepage waters rise. The appellant Perkins claims a first and prior right to take and use such measured quantity of water from the stream, claiming that his right to the use thereof is superior to the right of any and all persons holding decreed rights under the decree of 1892 in cause No. 404.

*Supreme Court Case No. 8405.* This court's decision and judgment by Justice Albert Anderson, concurred in by Chief Justice Howard A. Johnson and Justice Hugh R. Adair, with Justices Morris and Erickson dissenting, adjudged void the claim of John E. Perkins to the additional water right which he claimed in waters of Dempsey Creek over and above those awarded in the decree of 1892 and restrained Perkins from asserting any claim of right based on his diversion of the waters of said creek into certain "pot holes" on his upstream land or by his measuring of the flow of seepage entering the stream above the heads of the ditches of the decreed water users of Dempsey Creek.

On May 10, 1944, the remittitur with a copy of the court's opinion attached was filed in the office of the clerk of the district court of Powell county where is filed the judgment roll in district court cause No. 2839. Such filing of the remittitur and final judgment of this court under the well recognized and long established practice in this state, should have terminated the controversy and ended the case, but Perkins, the unsuccessful litigant, has persistently refused to acknowledge his defeat and has invoked various and sundry proceedings both in this court and in the district court in an endeavor to re-litigate the identical controversy so fully and finally determined by this court as aforesaid.

On December 30, 1944, the district court signed, filed and caused to be entered in its cause No. 2839 a final decree as directed by this court in its said decision and judgment on the appeal.

*Supreme Court Case No. 8595.* From such formal judgment so entered against him Perkins again appealed to this court,

being case No. 8595 herein. By this time the personnel of this court had changed, Carl Lindquist having succeeded Howard A. Johnson as Chief Justice, E. K. Cheadle having succeeded Albert Anderson as Associate Justice and Albert Angstman having succeeded Leif Erickson as Associate Justice. With such changed personnel, this court heard the arguments on said second appeal, both on the merits and on respondents' motion to dismiss the appeal and thereafter on June 4, 1946, the court made an order granting respondents' motion to dismiss the appeal, Chief Justice Lindquist and Justices Cheadle and Adair concurring and Justices Morris and Angstman dissenting.

Since the judgment entered in the district court at the direction of this court is nevertheless the judgment of this court and since no appeal lies to this court from a judgment of this court (Kimpton v. Jubilee Placer Min. Co., 22 Mont. 107, 55 Pac. 918), respondents motion to dismiss the appeal was properly granted.

*Res Judicata.* In dismissing the appeal in case No. 8595, Woodward v. Perkins, 119 Mont. 11, 171 Pac. (2d) 997, this court recognized and applied the rule as stated in 2 Freeman on Judgments, 5th Ed., section 639, pp. 1345, 1346, namely: "The judgments of appellate courts are as conclusive as those of any other court. They not only establish facts, but also settle the law, so that the law as decided upon any appeal must be applied in all the subsequent stages of the cause, as they are res judicata in other cases as to every matter adjudicated." See also In re Smith's Estate, 60 Mont. 276, 199 Pac. 696; Brennan v. Jones, 101 Mont. 550, 55 Pac. (2d) 697, 700; and Anderson v. Wyoming Development, Co., 60 Wyo. 417, 154 Pac. (2d) 318.

Justice Cheadle's concurring opinion recites [116 Mont. 46, 171 Pac. (2d) 1005] : "I concur in the result arrived at by the majority, because I feel that there must be an eventual end to litigation, and that whether the decision of this court, reported in 116 Mont. 46, 147 Pac. (2d) 1016, was correct or otherwise, so far as this court is now concerned the matter is res judicata."

Justice Angstman's dissent denies finality to the decision and

judgment of this court in case No. 8405, supra, rendered more than two years previous and it attempts to read out of the jurisprudence of this state the doctrine of res judicata. Justice Morris, joining in said dissent, wrote: ''The rule of res judicata comes to us from the old common law. It finds implied, but no express authority in our statutes and Constitution.''

The foregoing dissents of Justice Morris and Justice Angstman in case No. 8595, 119 Mont. 11, 171 Pac. (2d) 997, pages 1005-1008) ignore the express provisions of our Codes.

''A judgment is the final determination of the rights of the parties in an action or proceeding.'' Sec. 9313, Rev. Codes of Montana 1935.

''The effect of a judgment or final order in an action * * * before a court or judge of this state, * * * having jurisdiction to pronounce the judgment or order, is as follows:

''1. In case of a judgment or order against a specific thing, * * * the judgment or order is conclusive upon the title to the thing * * * or the condition or relation of the person.

''2. In other cases, the judgment or order is, in respect to the matter directly adjudged, conclusive between the parties and their successors in interest * * *'' Sec. 10558, Rev. Codes of Montana 1935.

The dissent of Justice Angstman in case No. 8595, as well as his opinion, to which the majority subscribe, in the instant case No. 8767, take the view that the only proper judgment for the district court to have entered in its cause No. 2839, or for this court to have ordered in its case No. 8405, was one ordering a new trial or for a non-suit as to the cross-complaint of the defendant and cross-complainant John E. Perkins in said action.

It is rather surprising that the judges who have signed the majority opinion herein announce the above as their view of the manner in which this court should have decided case No. 8405, especially since none of the subscribing judges was a member of this court at the time case No. 8405 was submitted, argued or decided and none heard the arguments nor participated in the conferences which resulted in the court's de-

cision therein nor have they been privileged to read the evidence taken in the district court as the transcript thereof was not made a part of the record or proceedings in the instant action. The writer of this dissent is the only member of this court as presently constituted who sat on the appeal in case No. 8405.

Fortunately, however, this is a government of law and not of men and our Codes expressly set forth what lawfully may be done by this court in an equity case such as was then and such as is now before us.

Section 8805, Revised Codes of Montana 1935, provides: "The supreme court may affirm, *reverse,* or modify any judgment or order appealed from, *and may direct the proper judgment or order to be entered,* or direct a new trial or further proceedings to be had. * * * Its judgment in appealed cases must be remitted to the court from which the appeal was taken. In equity cases * * * the supreme court *shall review all questions of fact arising upon the evidence presented in the record,* whether the same be presented by specifications of particulars in which the evidence is alleged to be insufficient or not, *and determine the same, as well as questions of law,* unless, for good cause, a new trial or the taking of further evidence in the court below be ordered * * *" (Emphasis supplied.)

In its decision and judgment on the appeal in case No. 8405 the majority of this court complied with the express mandates of the above statute which permits this court under the facts of that case to reverse the judgment of the district court appealed from and to "direct the proper judgment * * * to be entered."

In that decision this court said: "Seepage water which has its rise along the bed of a stream and forms a natural accretion thereto belongs to that stream as part of its source of supply, same as feeder springs. An appropriator on the stream has the right to all such tributary flow even as against the owner of the land. This is the general rule supported by court decisions in a number of states. Annotations in 89 A. L. R. 218. The de-

cision of this court in Beaverhead Canal Co. v. Dillon Electric Light & Power Co., supra [34 Mont. 135, 85 Pac. 880], which has been repeatedly referred to with approval, is to that effect. * * *

"The respondent therefore accomplished nothing by his diversion of water into the pot holes nor by measuring the flow of seepage entering the stream. The evidence is wholly inadequate to support the finding that an additional flow in the stream had been created and without which there is no support of the decree granting the additional water right. * * *

"The judgment and decree of the lower court is reversed. The cause is remanded with direction to enter a decree for the plaintiffs adjudging void defendant's claim to an additional water right as set forth in his cross-complaint and restraining him from asserting any claim of right based on such cross-complaint." Woodward v. Perkins, 116 Mont. 46, 147 Pac. (2d) 1016 at 1019.

Again dissatisfied with the decision of this court, the appellant Perkins petitioned for a rehearing in case No. 8595, which petition was by this court denied September 11, 1946.

*Supreme Court Case No. 8701.* Ten days later, to-wit, on September 21, 1946, Perkins filed in this court an original proceeding, being case No. 8701, seeking a writ of supervisory control against the district court of Powell county and the judge of said court asking that this court order withdrawn the remittitur issued May 5, 1944, in case No. 8405 and that this court upon substantially the same allegations as are set forth in the case at bar, grant him substantially the same relief as is here prayed for.

By order of December 21, 1946, this court denied Perkins' application for the writ, Chief Justice Lindquist and Justices Adair and Cheadle concurring in the order, and Justices Morris and Angstman dissenting.

Again dissatisfied, Perkins, on December 30, 1946, filed in this court a petition for a rehearing and reconsideration of his

original petition for a writ in case No. 8701, which petition was by this court denied on January 2, 1947, Chief Justice Lindquist and Justices Adair and Cheadle concurring in the order and Justices Morris and Angstman dissenting.

*District Court's Cause No. 3317.* On February 18, 1947, John E. Perkins as plaintiff, commenced the instant action in the district court of Powell county, being cause No. 3317 therein, against the defendants Joe M. Kramer, Joe Ryan, Pacific Normandin, Lillian Quinlan, Tom Ryan, Harvey F. Eliason, Annie M. Johnson and Thomas E. Woodward. Each and all of the defendants are either parties plaintiff named in district court cause No. 2839, or successors in interest to such parties plaintiff. In his complaint in said district court cause No. 3317, the plaintiff John E. Perkins has attached as exhibits the pleadings of the parties in district court cause No. 2839, as well as the district court's findings of fact, conclusions of law and final decree and judgment therein. Also attached to said complaint is a copy of the decree of 1892 in district court cause No. 404. In the prayer to his complaint in district court cause No. 3317, the plaintiff John E. Perkins seeks a declaratory judgment by the district court declaring and determining that ''he is not inhibited by the decision in cause No. 8405 of the Supreme Court of the State of Montana, nor by the Decree and Judgment in cause No. 2839 of the District Court of Powell County from capturing and storing water from the upper reaches of Dempsey Creek and its tributaries during winter months and periods of high water when such water would otherwise flow to waste but that he may capture and store the same and reclaim the same water as his own, the identity of the water being demonstrated, and that defendants and all others acting in the aid or assistance of them be restrained, prohibited and inhibited from filing and/or prosecuting during the pendency of this action any action or proceeding against plaintiff interfering with plaintiff's pursuing the relief here sought by him.''

The prayer also asks that the district court by decree determine and declare ''the rights, liabilities, duties, responsibilities

and legal relations of the parties to this action in respect to the water rights herein described and the storage during winter months and during periods of high water when the flow of water diverted and stored by plaintiff would otherwise run to waste and to declare plaintiff's right to pick up as his water the flow of Dempsey Creek so stored by him as his own water and make the use thereof and to make such experiments and demonstrations upon Dempsey Creek as may be essential in showing the identity of water.''

The defendants appeared by filing general demurrers to plaintiff's complaint. The demurrers were heard by the district court and sustained. Plaintiff declined to plead further, whereupon judgment was entered dismissing the action. This is an appeal from that judgment.

· *District Court Cause No. 404.* September 19, 1891, Peter Johnson, plaintiff, commenced in the district court, Cause No. 404 therein, against 22 named defendants, including John Perkins and James Perkins, to determine and adjudicate the rights of the various parties in the waters of Dempsey Creek.

The complaint avers: ''That it is for the interest of all parties, plaintiff and defendants, that the Court should in one decree settle the relative priorities and rights of all the parties thereto in the waters of said Dempsey Creek'' and prays ''that the court may in one decree settle the relative priorities and rights of all the parties to this suit.'' Following a trial the district court made written findings of fact and conclusions of law wherein it found as facts that seven certain defendants, including James Perkins and John Perkins ''have appropriated none of the waters of Dempsey Creek whatsoever.''

*Decree of 1892.* By judgment and decree rendered and entered August 25, 1892, the district court adjudged the plaintiff and 15 of the named defendants as owners of specifically designated water rights are entitled to the use of the waters of Dempsey Creek in the amounts, order and manner set forth in such decree and further adjudging that the remaining seven named

defendants, including James Perkins and John Perkins take nothing by the action and that they be forever enjoined and restrained from diverting or interfering with the waters of said creek.

The decree adjudicates the rights and priorities of the parties to the suit as follows:

| Owner | Number of Right | Date of Priority | Number of Miner's inches of water |
|---|---|---|---|
| John and Henry Quinlan | No. 1 | 1865 | 105 |
| N. J. Bielenberg | No. 2 | 1865 | 174 |
| N. J. Bielenberg | No. 3 | 1865 | 100 |
| William T. and Eliza C. Elliott | No. 3 | 1865 | 100 |
| Henry and John Quinlan | No. 4 | 1865 | 55 |
| Henry and John Quinlan | No. 5 | Apr. 1866 | 103 |
| Patrick Quinlan | No. 5 | May 1866 | 103 |
| Peter Johnson | No. 5 | 1866 | 103 |
| Herman Johansen | No. 6 | 1867 | 50 |
| Peter Johnson | No. 7 | 1867 | 50 |
| Pat Quinlan | No. 7 | 1867 | 50 |
| Henry and John Quinlan | No. 8 | 1868 | 185 |
| Peter A. Pierce | No. 9 | May 1869 | 113 |
| J. S. Turner | No. 9 | May 1869 | 113 |
| Kohrs and Bielenberg | No. 10 | 1869 | 50 |
| Peter A. Pierce | No. 11 | 1871 | 40 |
| Herman Johansen | No. 11 | 1871 | 40 |
| W. T. & Eliza C. Elliott | No. 12 | Mar. 1871 | 190 |
| Peter Normandin | No. 13 | April 1872 | 95 |
| Eli Dezourdi | No. 14 | May 1873 | 95 |
| N. J. Bielenberg | No. 15 | 1873 | 200 |
| Eliz Dezourdi | No. 16 | May 1874 | 80 |
| John Johnson | No. 17 | 1877 | 60 |
| Peter Normandin | No. 17 | Apr. 1881 | 45 |

| Alvin W. Sager | No. 18 | Apr. 1881 | 45 |
| W. T. & Eliza C. Elliott | No. 19 | Apr. 1883 | 150 |
| James Beal | No. 20 | 1884 | 100 |
| Herman Johansen | No. 21 | 1891 | 110 |

The decree of 1892 in Cause No. 404 further provides:

"It is further ordered and adjudged that the plaintiff and each of the defendants in the order hereinbefore named have the right to use the waters of Dempsey Creek for the purposes of irrigation, domestic use and for watering stock.

"It is further ordered and adjudged that the defendants, and each of them, be and they are hereby enjoined and restrained forever from diverting or interfering with the waters of said Dempsey Creek; except that each of said defendants and the plaintiff may, in the order named, make reasonable use thereof in the amounts named and for the purposes mentioned, and until each has used the water in the manner and amounts mentioned the plaintiff and each of the defendants is restrained from using and diverting the same.

"It is further ordered and adjudged that the plaintiff and each of the defendants must make reasonable use of the water allotted to him, and that said waters when not so used, or the surplus thereof, must be turned into the said Dempsey Creek by the plaintiff and each of the defendants respectively."

Subsequent to the 1892 decree and prior to the commencement of district court causes Nos. 2839 and 3317, John E. Perkins acquired and succeeded to the following rights decreed in district court cause No. 404, namely: 12½ miner's inches from right No. 1; 27½ miner's inches from right No. 4; 26 miner's inches from right No. 8; 40 miner's inches from right No. 11, and 100 miner's inches from right No. 20.

If the drain ditches of the appellant Perkins would facilitate the flow of the seepage waters into Dempsey Creek and add to the quantity of water flowing therein as appellant here contends, then all the decreed water users would profit therefrom for it would make available more water to supply their rights including the amounts to which appellant Perkins is entitled from

rights Nos. 1, 4, 8, 11 and 20 under the 1892 decree. However, appellant does not merely seek to make available more water with which to supply the rights of himself and others entitled to same under the decree but he asks to have adjudicated and admeasured to him a first and prior right to take and use from Dempsey Creek an amount of water equal to all the seepage waters so intercepted by and collected in his drain ditches before being required to use any of the waters to which he may be entitled under the 1892 decree and in addition to and over and above the waters to which he or any of the other water users shall be entitled under such 1892 decree. Thus would appellant by-pass, circumvent and nullify the 1892 decree to the extent and amount of all seepage waters that should flow through his drain ditches on their way to the creek less evaporation and waste and thus would he have all the decreed users enjoined and restrained from taking or using any of the waters of Dempsey Creek until after such seepage waters were first admeasured to him.

Perkins claims he has *developed* water which he can turn into the stream and then recapture and use. This same contention was made by plaintiff in the case of Rock Creek Ditch & Flume Co. v. Miller, 93 Mont. 248, 17 Pac. (2d) 1074, 89 A. L. R. 200. There this court held as stated in paragraph 5 of the syllabi in 93 Mont. 248, 17 Pac. (2d) 1074: "Percolating and seepage waters which came into natural flow of stream after being used for irrigation purposes *held not 'developed water,'* so as to entitle former appropriator to reclaim and use such water as against subsequent appropriators." The opinion further holds that, "One cannot be said to *have 'developed water'* who has diverted it from a running stream and has conveyed it elsewhere. The idea of 'developed water' connotes obtaining subsurface waters which have not theretofore been available." The above opinion was by Chief Justice Callaway and concurred in by all members of the court, including Justice Angstman.

If water turned on land to irrigate it does not entitle the former appropriator to reclaim and use it, how could he acquire

such right by turning such water from a stream and dumping it into natural depressions or "pot holes" on porous ground when it sinks from sight (as it would if run upon irrigated land) to again claim the right to take and use it as "developed water" against either subsequent or prior appropriators, when it drains, trickles, or seeps into the stream lower down?

The Rock Creek case, supra, is cited with approval in cause No. 8405. The record in district court cause No. 2839, supreme court case No. 8405, shows that the question of whether the water claimed by Perkins was *developed* or additional water was gone into fully, many witnesses familiar with conditions testifying for each side, and this court found and held Perkins' claim to an additional water right as set forth in his cross-complaint was not proven and directed a decree to be entered "adjudging void defendant's claim to an additional water right," and such a decree was entered therein. This decision follows and is supported by the rules laid down in the Rock Creek case, supra, and in the other Montana cases cited therein.

The Rock Creek case is quoted and followed in discussing "developed waters" in State ex rel. Mungas v. District Court, 102 Mont. 533, 59 Pac. (2d) 71.

The rule as to developed or additional water established by the court in the Rock Creek case, supra, is well stated in Re Nix, 96 Colo. 540, 45 Pac. (2d) 176, 178, where petitioner claimed the water used by him was developed from seepage. The court said, "But to entitle him to such use, he must prove that the water thus added to the stream was produced and contributed by him, and that, if not interfered with but left to flow in accordance with natural laws, it would not have reached the stream; and he must prove this by clear and satisfactory evidence." The above case also holds a prior decision res judicata against the petitioner.

In the case at bar the evidence stands undisputed that the water now claimed by Perkins was a part of the *natural stream,* which he diverted into these "pot holes," and then seeks to

recapture the seepage therefrom by means of drains lower down. Such water under the above cases from Montana and Colorado is not developed or additional water subject to appropriation as against prior appropriators.

Where the same question has been decided by a court of competent jurisdiction in a former action between the same parties and the judgment therein become final, the dissatisfied parties may not thereafter in a new and independent action for a declaratory judgment question the former adjudication as such latter action does not present a justiciable issue or actual controversy under the statute authorizing actions for declaratory judgments. See Traveler's Insurance Co. v. Wechsler, D. C., 34 F. Supp. 717; Flanigan v. Security-First National Bank, 41 F. Supp. 77; Shearer v. Backer, 207 Ky. 455, 269 S. W. 543; Greasy Brush Coal Co. v. Hayes, 292 Ky. 517, 166 S. W. (2d) 983; Phelps County v. Holdrege, 133 Neb. 139, 274 N. W. 483; Back's Guardian v. Bardo, 234 Ky. 211, 27 S. W. (2d) 960; Shick v. Goodman, 333 Pa. 369, 5 A. (2d) 363.

In Phelps County v. Holdrege, supra, the court in speaking of the Declaratory Judgments Act said [133 Neb. 139, 274 N. W. 484]: "It is not intended as a substitute for a new trial or appeal; or as a method of destroying a proper exercise of power in a former action; or as authority for a second trial by the same parties on identical issues in different forums; or as justification for an unnecessary decision; or as approval of collateral attacks on former adjudications."

In 16 Am. Jur., Declaratory Judgments, page 295, Section 23, it is said: "Questions already adjudicated by a court having jurisdiction of the subject matter and the parties cannot thereafter be the subject between such parties and their privies, of an actual controversy within the meaning of the term in the Declaratory Judgments Act. The Act is not intended to be used to elucidate or interpret judicial decrees or judgments already entered or to modify or declare rights thereunder." See also note in 154 A. L. R. 740 at pages 749 to 751.

In view of the foregoing authorities the complaint failed to

present either a justiciable issue or an actual controversy or to state a cause of action. It·follows that the district court properly sustained the demurrers to the complaint and rendered and entered judgment of dismissal, which judgment should be affirmed.

The principal function of a judgment is to adjudicate the existence or nonexistence of the right or liability in question. The valid judgment of a court of competent jurisdiction directly upon the particular point when once it becomes final when pleaded becomes a bar and when introduced in evidence becomes conclusive between the same parties upon the same points or matter. The district judge respected this court's decision and judgment in case No. 8405. He obeyed this court's judgment and made the judgment in the district court conform thereto. This is as it should be. Later when the defeated party to the litigation sought to again re-litigate in the district court the same point and matter, the district judge by sustaining the demurrer to the complaint in effect held that such procedure was not permissible, the point in issue having been finally settled and determined by the judgment of this court in case No. 8405.

After this court lost jurisdiction in case No. 8405, it, like all parties to the litigation and their successors in interest, became bound by the adjudication and I find no authority for the majority who have become members of this court subsequent to the time that the judgment in case No. 8405 became final to, in effect, grant a rehearing on the points and issues there adjudicated. This court demands that others obey its judgments and it most certainly should recognize, respect and enforce its own decisions and judgments when once they become final.

Rehearing denied October 28, 1948.