THE HON. HENRY C. SMITH,
THE HON. WILLIAM L. HOLLOWAY, } Associate Justices.

---

CARLSON, APPELLANT, *v.* CITY OF HELENA, RESPONDENT.

(No. 2,979.)

(Submitted February 3, 1911. Decided February 23, 1911.)

[114 Pac. 110.]

*Cities and Towns — Installation of Municipal Water System—Bonds—Extension of Indebtedness—Elections — Water Rights—Rights of Prior Appropriators—Diversion—Who may not Complain—Ordinances—Form—Injunction.*

Cities and Towns—Municipal Water Plant—Extension of Indebtedness—
Submission to Electors—When Proper.
1. Where a city council had first acquired a pure and wholesome supply of water, ample for the needs of the city and its inhabitants, for a proposed water plant, and ascertained that the cost of installing it was within the compass of the sum which it could lawfully expend for that purpose, the submission of the question to the taxpayers (Rev. Codes, sec. 3259) whether the city's limit of indebtedness should be exceeded in the amount so ascertained for the purpose of procuring and installing such supply was proper.

Same—Water Rights—Rights of Prior Appropriators—Diversion from Watershed.
2. A city had by purchase acquired the first four appropriations of water on a certain stream, the total quantity in which at certain seasons of the year does not exceed 150 inches, which amount was ample, however, to supply the needs of the city and its inhabitants. The fourth in point of time was decreed to it in the amount of 1,000 inches, with

the right to use it "beyond and without the watershed" of said creek. *Held*, in a suit for injunction, that under these conditions, the city was the first appropriator to the extent of 1,328 inches, the aggregate of the four appropriations, and that under the rule that a prior appropriator may change the point of his diversion or the use of his right, so long as it does not prejudicially affect that of any subsequent appropriator, the city had the right to divert the water from the watershed of the creek, in quantity sufficient to supply the needs of its proposed municipal water system.

Same—Diversion by Prior Appropriator—Who may not Complain.

3. One who is not a subsequent appropriator of water cannot complain that an intended diversion by a prior owner may injuriously affect someone who has a water right subsequent in point of time to that owned by the prior appropriator.

Same—Election—Ordinances—Form—Injunction.

4. The fact that an ordinance provided for a special election to determine whether the limit of the city's indebtedness should be extended for the purpose of "procuring a water supply" and constructing a water system, when the city had already purchased and paid for such supply, could not have so far misled the electors to their prejudice as to require the issuance of an injunction to prevent the holding of the election. The electors were not injured by reason of the fact that an initial expense of installing the plant had already been met without their knowledge.

*Appeal from District Court, Lewis and Clark County; J. Miller Smith, Judge.*

SUIT by Oscar Carlson against the city of Helena to enjoin defendant from taking further proceedings to procure a water supply, *etc.* From a decree for defendant, plaintiff appeals. Affirmed.

*Mr. C. W. Wiley* submitted a brief in behalf of Appellant, and argued the cause orally.

*Messrs. Gunn & Hall*, appearing as *amici curiae*, submitted a brief and reply brief. *Mr. M. S. Gunn* argued the cause orally.

In behalf of Respondent, city of Helena, *Mr. Edward Horsky,* City Attorney, submitted a brief and reply brief, and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On November 22, 1910, the plaintiff, a taxpayer, and the defendant city, submitted to the district court of Lewis and Clark

county, upon an agreed statement of facts, a controversy which had arisen respecting certain proceedings taken and contemplated by the city to secure a water supply to be owned, operated, and controlled by it. Many of the facts agreed upon have become so familiar by reason of their repeated recital in litigation heretofore that they will not be referred to specifically. It is sufficient for the purposes of this appeal to say that for many years the city of Helena has been indebted beyond the three per cent limit; that heretofore a private corporation has been supplying the city and its inhabitants with water under and by virtue of a franchise granted by the city; that the franchise expired on January 15, 1910, and the private concern has since occupied the streets of the city by sufferance. Some time prior to October 10, 1910, the city council took steps looking to the acquisition of a water supply to be owned and controlled by the city, and to that end certain water rights in Beaver creek were purchased, and thereafter the matter referred to the water committee of the council, which reported on October 10, 1910, a comprehensive plan for the installation of a city-owned plant, if funds sufficient to meet the expense could be secured by vote of the qualified electors. The report of the committee was adopted by the council and Ordinance No. 785 passed and approved. This ordinance provides for holding a special election to determine whether the limit of the city's indebtedness shall be exceeded by the issuance and sale of city bonds to the amount of $650,000, "for the purpose of procuring a water supply from Beaver creek and constructing a water system for said city." The purpose of this action is to secure an injunction prohibiting the city from proceeding further in the matter. The trial court determined the cause adversely to plaintiff's contention, refused an injunction, and rendered judgment in favor of the city, from which judgment this appeal is prosecuted.

The proceedings of the city are attacked upon the ground that Ordinance 785 does not submit the question to the voters in the [1] manner required by law. In *Carlson* v. *City of Helena,* 39 Mont. 82, 102 Pac. 39, a similar question was considered. In that case, however, it appeared affirmatively that the city council

had not ascertained that the particular water supply there in question could be procured, or that the installation of the system could be compassed by the amount of indebtedness sought to be incurred, and this court said: "The contention is that the council is authorized to consult the taxpayers in general, as to whether it may proceed to acquire a supply of water for the city, but that it may not devest itself of the discretion vested in it by law, as the governing body of the city, by leaving it to the electors to select a particular supply. This objection, it is said, is fundamental, because the discretion to purchase a particular supply is vested in the council, and this discretion cannot ordinarily be exercised until the council has ascertained that the particular supply is available, and that the cost of acquiring and installing it can be compassed by the amount of the indebtedness to be incurred. The contention must be sustained." The court further said, however: "If the council should have first ascertained that the particular supply could be acquired, and that the cost of it, together with the cost of installment, is within the compass of the sum which the city can lawfully expend for that purpose, then there could be no possible objection to allowing the voters to speak as to the propriety of securing the particular supply."

The question for determination here is: Has the city council ascertained that the Beaver creek supply is available, and that the cost of acquiring and installing it can be compassed by the amount of indebtedness sought to be incurred? It appears that the city has already acquired by purchase certain water rights in Beaver creek. These rights are: (1) Three agricultural appropriations: (a) The Reynolds right, of 67 miner's inches, appropriated March 31, 1865; (b) the Beatty *et al.* right, of 194 inches, appropriated April 1, 1865; and (c) the Davies right, of 67 miner's inches, appropriated October 1, 1865. (2) The French Bar placer mining right of 1,000, appropriated October 1, 1865. The rights of the several appropriators to the use of the waters of Beaver creek have heretofore been fully adjudicated, first in *Beatty* v. *Murray Placer Mining Company*, and again in *Spokane Ranch & Water Company* v. *Beatty et al.* The

first case was decided many years ago in the district court, and there was not any appeal. In the second case there was an attempted appeal to this court; but, by reason of the failure of appellants to give notice of appeal to all adverse parties, the appeal was dismissed. (*Spokane Ranch & Water Co.* v. *Beatty et al.*, 37 Mont. 342, 96 Pac. 727.) The dismissal of the appeal operated to affirm the decree of the district court. (Rev. Codes, sec. 7117.)

It is agreed that the waters of Beaver creek are pure and wholesome, and that the minimum supply is never less than 165 inches, and that this quantity is ample to meet the needs of the city and its inhabitants. It is further agreed that the city first determined that the cost of procuring this water supply for the city, including all the expense of right of way and installation of a water system, will not exceed the amount sought to be raised by this issue of bonds. There is left, then, but the single question: Does it appear that the city has a supply of water which is available? And this is to be answered by the reply to another question, *viz.:* Does it appear that the city of Helena can lawfully divert from the Beaver creek watershed sufficient water to supply its needs?

In the *Spokane Ranch & Water Co. Case* above the court decreed that the Reynolds right of 67 inches is the first in time and prior to all other rights; that the Beatty *et al.* right, of 194 inches, is the second; that the Davies right, of 67 inches, is the third; and the French Bar right, of 1,000 inches, is the fourth. With reference to the French Bar right, the court found: "(10) That on the first day of October, 1865, the said city of Helena, and its predecessors in interest, diverted 1,000 inches, being 25 cubic feet per second of the waters of Beaver creek, and appropriated the same for useful and beneficial purposes, through its French Bar ditch, extending from Beaver creek, in Broadwater county (then Jefferson county), state of Montana, to French Bar on the Missouri river, in Lewis and Clark county, said state, beyond the watershed of said Beaver creek, and appropriated the same for useful and beneficial purposes (being the same water right decreed, as of said date, to the Murray

·Placer Mining Company in said decree), and ever since said date have continued to use the same through its French Bar ditch and by means of its ditch known as the Beaver Creek Company ditch, or Indian creek ditch, which said ditch extends from Beaver creek, Broadwater county, state of Montana, to Indian creek in said county, beyond and without the watershed of said Beaver creek, for useful and beneficial purposes.'' And the decree provides that the city "is entitled to use the same beyond and without the watershed of said Beaver creek.''

Assuming, then, as the agreed statement of facts admits, that at certain seasons of every year the quantity of water in Beaver creek does not exceed 165 miner's inches, may the city still divert that water from the Beaver creek watershed? The decree in **[2]** the *Spokane Ranch & Water Company Case* above is a solemn adjudication that the city may rightfully use its French Bar right beyond and without the watershed of Beaver creek; and as there are but three appropriations prior in time and superior in right to the French Bar appropriation, and as the city owns all three of those prior appropriations, it is the first appropriator of all the waters of Beaver creek to the extent of 1,328 miner's inches. It is an elementary rule of law applicable to water rights that a prior appropriator may change the point of diversion or the use to which his water right has been applied, so long as it does not prejudicially affect the right of any subsequent appropriator. (Long on Irrigation, secs. 46, 50, and cases cited.) By virtue of its ownership of the first appropriation of 1,328 miner's inches, the city has *prima facie* the right to divert the waters of Beaver creek from the Beaver creek watershed, in quantity sufficient to supply its needs and the needs of its inhabitants.

Carlson is not one of the subsequent appropriators, and he cannot make the complaint that the diversion by the city may **[3]** injuriously affect someone who has a right to the use of the waters of Beaver creek subsequent in point of time to the rights owned by the city. If the time ever comes when a subsequent appropriator can show that he has a right which has been injuriously affected by reason of the city's diversion of the

water for city purposes, it will then be time to consider such claim; but it does not arise now.

So far as this record discloses, the city council, before calling the election, first ascertained that the particular supply has been acquired and that the cost of installment is within the compass of the sum which the city can lawfully expend for that purpose. Therefore, there cannot be any possible objection to allowing the voters to speak as to the propriety of securing the particular supply. (*Carlson* v. *City of Helena,* above.)

It is contended that Ordinance 785 is misleading, in that it [4] provides for submitting to the electors the question of procuring a water supply from Beaver creek; whereas, it appears that the city has already secured such supply. We do not think there is merit in this. It is true that the city has procured a water supply from Beaver creek, in the sense that it has already purchased and paid for certain water rights; but, in the sense that such supply has been brought to the city or made available for use in the city, it has not been procured, and certainly a voter would not be misled to his prejudice by reason of the fact that an initial expense has already been incurred and met, though he was not aware of it.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.