THRASHER et al., Respondents, v. MANNIX & WILSON, Appellant.

(No. 7,092.)

(Submitted October 3, 1933. Decided October 31, 1933.)

[26 Pac. (2d) 370.]

274

*Mr. Walter L. Pope* and *Mr. S. P. Wilson,* for Appellant, submitted a brief; *Mr. Wilson* argued the cause orally.

*Mr. W. E. Keeley,* for Respondents, submitted a brief and argued the cause orally; *Mr. William T. Boone,* of Counsel.

MR. JUSTICE ANDERSON delivered the opinion of the court.

The plaintiffs brought this action to enjoin the defendant from changing the place of diversion of a certain water right. All the parties to the action are the owners of one or more adjudicated water rights under a decree entered in 1915 in the district court of Powell county, Montana, in the waters of Gold Creek and its tributaries. The defendant, a corporation, is the owner of a water right of 150 inches, appropriated June 1, 1878, another of 350 inches, appropriated April 30, 1888, and a

third right which was adjudicated in the name of James Keenan, but subsequent to the decree, conveyed to the defendant. Some of the plaintiffs own rights prior to all of the defendant's rights.

The defendant's 1888 right is diverted from the waters of Gold and Pikes Peak Creeks, the latter being a tributary of the former, by means of a ditch taken from both creeks immediately above their confluence. This diversion is made through what is known as the Cannon & Brand ditch. Defendant's right, under date of June 1, 1878, was diverted prior to the year 1918, and at least since 1888, through the Cannon & Brand ditch. In 1917 defendant constructed a ditch known as its "high ditch," the point of diversion of which from Gold Creek was above all the points of diversion of the plaintiffs, being located some four miles distant up the creek from the point of diversion of the Cannon & Brand ditch. Following the completion of the "high ditch," defendant proceeded to divert through this ditch its 1878 water right.

The James Keenan water right has been at all times diverted through a ditch the point of diversion of which is lower on the creek than the points of diversion of defendant's other water rights and also of all the plaintiffs' water rights. Until the defendant acquired the James Keenan lands and the right appurtenant thereto, these lands were irrigated and operated as an independent and separate tract. The same point of diversion and use of the water under that right has obtained since the defendant acquired the James Keenan lands and water right. The record is barren of any evidence tending to show that the water right of 1878 was ever diverted through the James Keenan ditch.

It is conceded by all parties that during ordinary years there is sufficient water in Gold Creek to supply all the adjudicated rights, but in dry years there is insufficient water for all those rights, and in 1919, 1930 and 1931 there was a shortage of water in the creek, and many of the rights could not be supplied.

The plaintiffs assert that by the change in the point of diversion of the defendant's 1878 right they have suffered injury and are deprived of the use of water which would otherwise be available for their rights.

The trial court made findings of fact supporting plaintiffs' theory and sustaining their claim of injury, and entered a decree enjoining defendant from using its new point of diversion at any time there is insufficient water in the creek adequately to supply all the water rights and appropriations of the plaintiffs. Defendant moved for a new trial, which motion was by the court denied, and it has appealed from the judgment.

The principal question involved in this appeal is: Does the evidence support the findings and decree of the trial court?

Defendant, being entitled to the use of the water, may change the place of diversion if other appropriators are not thereby injured. (Sec. 7095, Rev. Codes 1921.) Plaintiffs, having affirmatively alleged injury as a result of the change of the place of diversion, thereby assumed the burden of proving such injury. (*Hansen* v. *Larsen*, 44 Mont. 350, 120 Pac. 229; *Lokowich* v. *City of Helena*, 46 Mont. 575, 129 Pac. 1063.)

It is apparent from the record that defendant's 1878 water right was appropriated by one John Keenan. In the decree adjudicating the rights of the various parties which was offered in evidence, it was adjudged, with reference to a predecessor in interest of the defendant: "And his grantors and predecessors in interest, for the purpose of irrigating the land belonging to them, and described in the answer of said defendant Frank Cannon, and which lands are situated out of the watershed of Gold Creek * * * appropriated and diverted * * * by means of ditches of sufficient capacity to carry the same, certain of the waters of Gold Creek and its tributaries of the following number of inches * * * and which said appropriations were made at the times and dates as follows, to-wit, (a) 150 inches of the waters of Gold Creek which were appropriated and diverted on June 1, 1878," etc.

Plaintiffs in the face of this adjudication in the decree, offered as a part of the evidence in their case, attempted

to prove that under this particular right there never was any water diverted from Gold Creek, at least prior to 1888. This evidence, and the argument based thereon, is entirely beside the point. It matters not that no particular ditch was described in the decree through which these waters were diverted. If there was any question as to the validity of that appropriation or the correctness of the result reached by the court, those are matters which any dissatisfied party to that case could have reviewed by this court on proper presentation. But that decree is no longer reviewable. It stands as an absolute finality, not merely as to the conclusions expressed, but as to everything directly or implicitly involved in reaching them. (*Lokowich* v. *City of Helena, supra;* see, also, *Zosel* v. *Kohrs,* 72 Mont. 564, 234 Pac. 1089.)

The plaintiffs also assert that the decree was by consent and therefore binding on no one, the basis of this assertion being that the former case was chiefly a controversy between certain placer mining water rights and these agricultural rights; many of these agricultural water users being represented in that action by common counsel, there being no serious controversy between them. We do not find that the record discloses that the former decree was entered by consent. But if we assume that it was so entered, the validity thereof would not in any way be affected, for a decree by consent has all the force and effect of a judgment *in invitum.* (*Interior Securities Co.* v. *Campbell,* 55 Mont. 459, 178 Pac. 582.)

Plaintiffs urge, and offered some proof tending to show, that defendant had since the construction of the "high ditch" brought some additional lands under irrigation with the waters so diverted. It appears from the record that these new lands are outside the watershed of Gold Creek. From the testimony it appears that the waters diverted under this particular right were, and the court found and so adjudged in the former decree, the waters thereby appropriated, and had been and could continue to be, used without the watershed of Gold Creek. In view of these facts no injury could result to these plaintiffs from this change of use, for the use both before and after

was for the same purpose; there being no opportunity for any of the plaintiffs to enjoy any benefits from percolating waters resulting from irrigation under this right inuring to them, as their lands are either all within the watershed of Gold Creek, or, if without, at a higher level than the lands of the defendant.

Much evidence was offered on behalf of the plaintiffs tending to show that the flow of Gold Creek was augmented below the point of diversion of the Cannon & Brand ditch and down to the point of diversion of the James Keenan ditch. This evidence was of no importance, for the reason that the point of diversion of the 1878 right was never at any time shown to have been below the intake of the Cannon & Brand ditch. One witness, Lingenfelter, testified that at a point above the intake of the Cannon & Brand ditch and below the intake of the "high ditch," water in an amount of 35 inches arose in the bed of the creek. This testimony, however, was of doubtful weight, in view of the fact that the witness in making his computation admitted he gave no consideration to the velocity of this augmented flow, a vital factor in determining the amount of flowing water. The undisputed evidence is that at times, when the creek was low, water flowing between the intake of the "high ditch" and the Cannon & Brand ditch diminishes rapidly through evaporation, seepage and other natural losses. This evidence was based upon the actual experience of the water commissioner.

True, there is evidence to the effect that if the "high ditch" of defendant was closed, there would be more water in the creek and some of the subsequent rights could be thereby filled in times of water shortage, but that is merely equivalent to saying that if the defendant is deprived of its prior right entirely, additional waters would be available for the owners of subsequent rights. The 35-inch augmentation of the stream was above the point of intake of other water users who had prior rights to any of those of the defendant, and at that time their rights were only partially filled, with all of the water in the creek diverted by them. There was no evidence that this par-

ticular augmented flow would in whole or in part reach the point of diversion of the Cannon & Brand ditch.

After a careful reading of the record, we are unable to find any evidence tending to support the findings and judgment of the trial court showing any injury to the plaintiffs by reason of the change in the point of diversion of the defendant.

Apparently the trial court became confused over the John and James Keenan rights and labored under the misapprehension that the particular right under consideration was originally diverted through the James Keenan ditch, for the court by numerous findings found that the ditches of the plaintiffs all had their respective points of intake above the original point of diversion of this particular right prior to this last change. Such was not the fact, as disclosed by the record, since certain rights of plaintiffs Antwine Thrasher, August Brand and David Hogan (those diverted on the east side of Gold Creek and other than those diverted through the Toner, Steiner and McGuerin ditches) are admittedly diverted below the intake of the Cannon & Brand ditch. This error appears in the eleventh, twelfth, thirteenth and fourteenth findings of the trial court.

Furthermore, the trial court determined that by the use of the "high ditch" the defendant secured an additional 150 inches of water not theretofore enjoyed by it. Both the James Keenan and John Keenan rights were for 150 inches each. They are treated in the findings as being an identical right, instead of being separate and distinct rights. All of the findings specifically mentioned are clearly erroneous in the respects mentioned.

It is accordingly ordered that the cause be remanded, with directions to the trial court to make findings of fact and enter judgment and decree in accordance with the views herein expressed. Appellants are entitled to their costs on this appeal.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and STEWART concur.

Rehearing denied November 18, 1933.