ROY W. FORRESTER, JR., CARL M. DAVIS, as Adminis-
trator of the Estate of ROY W. FORRESTER, Deceased,
CARLYLE CHAFFIN, ERMA CHAFFIN and GAYLE
CHAFFIN, Plaintiffs, Cross-Defendants and Appellants,
v. ROCK ISLAND OIL AND REFINING CO., Inc., a cor-
poration, Defendant, Cross-Complainant and Respondent.

No. 9602.

Submitted December 2, 1957. Decided April 1, 1958.

323 Pac. (2d) 597.

334

Collins & Burns, John Collins, Dillon. John Collins argued orally for appellants.

Corette, Smith & Dean, Kendrick Smith, Butte, W. G. Gilbert, Jr., Dillon. Kendrick Smith argued orally, for respondent.

MR. JUSTICE ANGSTMAN:

Plaintiffs commenced this action against defendant, Rock Island Oil & Refining Company, a corporation, to adjudicate water rights on the Blacktail Deer Creek (hereinafter called Deer Creek) in Beaverhead County and to prevent defendant from withdrawing water from certain swamps which comprise what is known as Jake Slough and which swamps are alleged to be feeders of Deer Creek.

Defendant filed an answer and cross-complaint naming the plaintiffs and ten others as cross-defendants.

The cross-defendants filed pleadings and issues were raised, many of which have been disposed of by stipulations of counsel. The findings of fact and conclusions of law recite which findings are agreed to and which are contested.

The appellants are all the plaintiffs named in the complaint except Patrick T. Flynn and Hubert S. Flynn.

After hearing the evidence the trial judge examined the area.

The record shows that several miles upstream from Jake Slough is what is known as Tinning Slough and the latter in a previous action was held to be nontributary to Deer Creek.

Much of the evidence in the case related to that slough, but it is agreed that so far as the Tinning Slough is concerned there is no controversy between the parties in this proceeding.

The first question presented by the appeal is the propriety of the court's findings as they relate to Jake Slough. In substance the court found that it is composed of two swamps located on the west side of Deer Creek, downstream and on the same side of Deer Creek as Tinning Slough; that much of the area is covered by water-loving plants and cattails; the water is stagnant and the surface from six to thirty inches consists of peat-like substance or dead root material underlaid by a dense silt layer; that in some places there is gravel underlying this silt-like or clay substance which is "almost impervious to water"; that the slough or swamp area is a perched water table lying in an area higher than Deer Creek; that the slough is not tributary to Deer Creek and the waters therein in their natural condition do not contribute to the flow of Deer Creek; that a ditch had been dug in the slough in the 80's; that two dragline ditches were started November 1, 1948, and completed April 29, 1949, by predecessors in interest of defendant Rock Island Company; that these ditches developed about 180 inches of water which is used to irrigate about 287 acres of alfalfa; that these ditches do not interfere with the flow of any water into Deer Creek; that the use of the water tends to increase the water and the return flow of water to Deer Creek; that the ditches produce a constant volume of developed water at all seasons of the year; that the water is put to a beneficial use and is more beneficial to the other parties than if the slough were allowed to remain in its natural condition; that plaintiffs received as much water in 1953 as in the years 1946 to 1949, inclusive, even though the annual precipitation in the year 1953 was six inches less than normal.

As conclusions of law the court found that Jake Slough is not tributary to Deer Creek and does not in its natural condition contribute to the flow of water therein; that the ditches

do not interfere with nor disturb the flow of water into Deer Creek; that the 180 inches of water thus developed is the property of defendant Rock Island Oil & Refining Company and used by it to irrigate its land; that the development of water by the dragline ditches is a practice to be encouraged and prevents loss of water by evapo-transpiration and helps other users of water from Deer Creek.

The evidence shows that the Jake Slough contained water at all times and it was so wet and swampy that cattle mired down in it; people shot ducks in the pot holes and in places the pot holes contained two or three feet of water in which fish were found.

Plaintiff Forrester testified that ''In some places the swamp does reach the edge of the creek but that is in the minority, in most of the places it does not reach the edge of the Blacktail Creek except on those points that I designated as feeders.''

He further testified: ''Behind the Jake Place we used to shoot ducks after the duck season opened in the fall. They'd come in these potholes, marshy country, to roost at night—it was legal at that time to shoot them at night—and we used to go up and shoot these ducks when they'd come into the potholes at night, and they weren't large, there were a series of five or six of them running up through there fed by a swamp. The creek would narrow up and get deep, then it would open up into a pothole, narrow up and get deep and open up into another pothole and eventually drain into the Blacktail Deer Creek.''

Ernest Orr, a witness for defendant, and who was familiar with the slough for many years, testified as follows: ''Q. Before the ditches were dug, was any water flowing out of the swamp into the creek? A. Might be a little, but no enough to amount to anything.''

O. W. Monson, a registered engineer and the head of the department of agricultural engineering of the State College of Bozeman, testified that he examined Tinning and Jake Sloughs in October 1952, and in December 1953 and during the

course of the trial in 1954 and found no living streams or well-defined course of water flowing into Deer Creek. He admitted however that in examining the property he found a small trickling stream that was entering Deer Creek, estimated about five miner's inches. He testified that he found the bottom of the dragline ditches in Jake Slough was higher than the bottom of Deer Creek. He made measurements on October 11, 1952, of the flow of water in Deer Creek above and below Jake Slough. He found a flow of 637 inches above the slough and 1,404 inches below, at a time when water was flowing in the dragline ditches.

Homer Turner, who was familiar with the area and had been over it many times, testified that he never saw any well-defined water course from Jake Slough to Deer Creek. He also testified that the water in Deer Creek was increased by irrigating the alfalfa field in question.

At the conclusion of the evidence, the court stated that it desired to make a personal investigation of the watershed of Blacktail Deer Creek and its tributaries and of certain ditches leading into the creek and tributaries, together with certain dragline ditches mentioned during the course of the trial. The trip was made on July 9, 1954, and was made in company with Roy W. Forrester, Jr., representing the plaintiffs, and Homer Turner representing the defendant, and consumed the major portion of one entire day.

Plaintiffs contend that the court was in error in finding that ▮ Jake Slough, in its natural condition, did not contribute to the flow of the water in Deer Creek. There is merit in this contention. The evidence is undisputed that some water found its way from Jake Slough into Deer Creek.

True the quantity was, according to some of the evidence, very limited and not of much consequence but still there was enough so that it cannot be said that the slough did not contribute at all to the flow of the water of Deer Creek.

However it does not follow that the court's conclusion was erroneous with respect to the 180 inches of water. The record

shows that the composition of the area embraced in Jake Slough was as found by the court, and that it retained most of the water in the slough. There is evidence supporting the court's conclusion that the use of the 180 inches of water by defendant on its alfalfa field does not lessen the flow of water to plaintiffs' land, but actually prevents loss of water by evapo-transpiration and helps other users of water by increasing the flow downstream.

There is much discussion in the briefs of counsel as to whether this case calls for application of the principle of developed water within the meaning of that term as used in Spaulding v. Stone, 46 Mont. 483, 129 Pac. 327; Rock Creek Ditch & Flume Co. v. Miller, 93 Mont. 248, 17 Pac. (2d) 1074, 89 A. L. R. 200, and other cases. The rule applies to waters collected and devoted to a beneficial use which form no part of the natural flow of a stream.

As to most of the waters collected by the ditches of defendant, it can be said that they did not constitute a part of the stream or at least that the district court was warranted in so finding. As to such waters defendant had a right to collect and use it where as here it increased rather than diminished the flow of the stream for the use of others.

The Supreme Court of California in Churchill v. Rose, 136 Cal. 576, 69 Pac. 416, 417, stated the applicable rule by saying that "it appears from the uncontradicted testimony of several witnesses that the spring was dug out by the predecessor of the defendant, and the flow of the water therefrom thereby increased to threefold its original flow; and it is clear that the defendant is entitled to the increased amount of water thus developed."

It was stated in the dissenting opinion (and on this point it does not appear that the court was divided) in Rio Grande Reservoir & Ditch Co. v. Wagon Wheel Gap Improvement Co., 68 Colo. 437, 449, 191 Pac. 129, 133, that: "Where one, by his own energy and expenditures, with the intention of using it

for irrigation, adds to the natural flow of a stream, it does not become a part of the natural flow, and such water though commingled, to distinguish it from the natural flow, has been given various names by the courts, such as, 'the increase,' 'independent water,' 'artificial water,' 'developed water,' 'saved water,' 'excess water,' 'new water,' 'free water,' 'water from an extraneous source,' 'artificial accretion,' etc.; but whatever the name, and whether saved water or developed water, it is universally held in all the irrigation states, that the one saving or developing it and adding it to the stream has a right to its use, and the use of the natural stream for its distribution, and to divert therefrom an equivalent amount for irrigation. This principle was announced by the Supreme Court of California as early as Butte Canal & Ditch Co. v. Vaughn, 11 Cal. 143, 70 Am. Dec. 769. In Creighton v. Kaweah C. & I. Co., 67 Cal. [221], 222, 7 Pac. [658], 659, it is said:

" 'At best the plaintiff would be entitled only to have the defendant enjoined from obstructing the flow of that which would have naturally flowed, unaided by artificial means, with which the plaintiff is not connected'." And see to the same general effect Reno v. Richards, 32 Idaho 1, 178 Pac. 81; L. Mini Estate Co. v. Walsh, 4 Cal. (2d) 249, 48 Pac. (2d) 666; and Bieser v. Stoddard, 73 Colo. 554, 216 Pac. 707.

Plaintiffs rely on Woodward v. Perkins, 116 Mont. 46, 147 Pac. (2d) 1016, but in that case the defendant sought to intercept and collect seepage waters which the evidence showed, drained to the creek.

The court was warranted in concluding from the evidence that the waters collected by defendant would not drain into Deer Creek and that defendants use of the 180 inches of water was beneficial rather than detrimental to plaintiffs and other users of water downstream. Whether defendant could recapture such of the water after it enters the stream as could be shown to be in excess of what would have been the natural flow need not be determined here. No attempt is being made by de-

fendant to fasten any right to the excess over the natural flow once it reaches Deer Creek. The court's conclusion, with respect to the 180 inch water right, finds support in the evidence. We will not interfere with the trial court's determination where it is supported by substantial evidence, though there be evidence the other way. In such cases we recognize the superior advantage occupied by the trial judge, not only in observing the conduct and demeanor of the witnesses, but also in viewing the premises as he did here.

Plaintiffs' next contention is that the court was in error in holding that defendant owns a water right of 132 inches as of the year 1866 out of Deer Creek.

The record shows that this right was involved in previous litigation in the district court of Beaverhead County. Decrees in three cases affect this right. The cases are numbered 711, 875 and 883. The trial court, in the case at bar, found that in those three former cases the right to the 132 inches of water was decreed to belong to William Orr and P. H. Poindexter and hence show that predecessors of defendant were not the owners thereof.

The court then found that there had been an oral transfer of this water right from William Orr and P. H. Poindexter to Poindexter & Orr Livestock Company during the year 1904; that the right was used by the latter corporation and its successor, the defendant, from 1904 to 1954; that no person claims or asserts the right to use this 132 inches except the defendant; that for more than ten years defendant and its predecessors in interest have asserted an open, adverse and hostile use of this 132 inches of water, at a time when its use deprived users of water of the same or later priority of water which they otherwise would have secured.

The court was right in holding that the three prior decrees do not establish that defendant was or is the owner of this water right. Case 711 was tried in 1888 and the decree adjudicated title to 132 inches of water as of 1866 to Poindexter and Orr.

Cases 875 and 883 were tried in 1903, the evidence having been submitted during that year but the decree in Case No. 875 was not entered until in 1905. The record does not show the date of the decree in Case No. 883. In Case 875, wherein Poindexter & Orr Livestock Company was plaintiff, it was decreed that plaintiff "is not the successor" to the 132 inch water right.

The decrees in the previous actions did not establish any right in this defendant or in its predecessor Poindexter & Orr Livestock Company to the water right of 1866 of 132 inches. But defendant contends, and the court found, that after the evidence was submitted in Cases 875 and 883, in 1903, there was an oral transfer of the right to Poindexter & Orr Livestock Company in the year 1904.

The decree in Case 711 determined that Axe and Cornell each owned a one-half interest in 264 inches of water as of 1866 out of Deer Creek. The record shows that in 1901, William C. Orr and P. H. Poindexter, as co-partners conveyed fifteen inches of this water right to the State of Montana, along with some land now occupied by the College at Dillon. Hence the most that defendant can now claim of this right is 117 inches.

Plaintiff's contention is that the several decrees above-mentioned established the fact that as of 1905 Poindexter & Orr Livestock Company had no interest in this water right. As above-noted those decrees had to do with evidence submitted in 1903 and did not consider facts occurring in 1904.

There is evidence sustaining the oral transfer of this water right to the Poindexter & Orr Livestock Company in 1904 to the extent of 117 inches. The parties are in disagreement as to whether a parol transfer of water rights may be made. The following cases support the rule that a parol transfer of a water right may be made by a squatter on public lands before patent issues and that it would not be affected by the statute of frauds. Featherman v. Hennessy, 42 Mont. 535, 113 Pac. 751; Wood v. Lowney, 20 Mont. 273, 50 Pac. 794; McDonald v. Lannen, 19 Mont. 78, 47 Pac. 648; Cook v. Hudson, 110 Mont.

263, 103. Pac. (2d) 137. Whether the same rule would apply after patent issues need not be determined here. The rule is that the defense of the statute of frauds is a personal privilege which cannot be interposed by strangers to the contract. 37 C. J. S. Frauds, Statute of, sec. 220, p. 715. This court followed that rule in Featherman v. Hennessy, supra.

Here plaintiffs are not parties to the oral transfer of the water right. They do not themselves claim the right. It is of no moment to them whether the seller or the purchaser owns the right. They can benefit only if both the seller and the purchaser and their successors are excluded from using the right. Hence they may not question the validity of the oral transfer.

Plaintiffs contend that since it was shown that after conveying a part of the land to the State of Montana, Poindexter & Orr conveyed the balance of 200 acres on which the 132 inch water right was used to Matthew Orr in December 1904 with the usual clause covering appurtenances, this negatives the idea that the Livestock Corporation of Poindexter & Orr had the water right. But as above-noted, the oral transfer of the water right to the Livestock Corporation had already been made, and the grantors of the 200 acres no longer had any interest in the 1866 water right to convey as being appurtenant to the land.

There are reasons why the finding by the court of adverse possession cannot aid the defendant. In the first place no party to this action claimed any right to the 132 inch water right. In order to acquire title by adverse possession, those claiming to be the legal owners of the right must be made parties.

Here the record shows that the State of Montana acquired fifteen inches of this right in 1901. If anyone other than defendant claims to own any right or interest in the remaining 117 inches that can be acquired by adverse possession such owner would have to be a party to the action. Of course as against appellants and others who were parties to the action and

have not seen fit to appeal, the finding may be sustained as to 117 inches.

Furthermore, if defendant's right depended upon adverse ██ possession alone, then it would not date back to 1866, but would come into being at the time the right was possessed adversely which according to the record was in 1904. Kenck v. Deegan, 45 Mont. 245, 122 Pac. 746. But as above-noted, the court's finding of an oral transfer of the right to defendant's predecessor in 1904 to the extent of 117 inches finds support in the record. Accordingly the court's conclusion to the extent of 117 inches of this right was correct.

Error is urged by plaintiffs in the conclusion of the court that defendant, Rock Island Oil & Refining Company, is entitled to use all of its water rights out of Deer Creek through any one or all of its ditches having a headgate or headgates in Deer Creek, excluding certain rights and particularly those out of the Jake Slough. They contend that the court's order amounts to an authorization for unlimited use as to time, amount and place of use of all of the numerous water rights claimed by defendant.

It appears from the record that the defendant, and its predecessors, over a period of years have accumulated in Deer Creek and its tributaries about 4,360 inches of water rights which are used wherever and whenever needed to irrigate about 34,000 acres of land, which extends approximately twenty-two miles up and down the valley.

Ernest Orr, manager of the Poindexter & Orr Livestock Company, testified that beginning in 1904, the Company moved the 132 inch right up to the home ranch, which is nine miles south of Dillon and used it on all of the different parts of the ranch and that the rights were not attached to any particular land. This practice has continued for more than fifty years.

R. C. M. 1947, sec. 89-803, specifically authorizes such use of water. It provides:

''The person entitled to the use of water may change the place

344

of diversion, if others are not thereby injured, and may extend the ditch, flume, pipe, or aqueduct, by which the diversion is made, to any place other than where the first use was made, and may use the water for other purposes than that for which it was originally appropriated.''

Plaintiffs have failed to show wherein they have been injured ■ or prejudiced in any way by such use. The burden was upon them to so show if they would seek to prevent the practice. Lokowich v. City of Helena, 46 Mont. 575, 129 Pac. 1063; Tucker v. Missoula Light & Ry Co., 77 Mont. 91, 250 Pac. 11; Hansen v. Larsen, 44 Mont. 350, 120 Pac. 229; Thrasher v. Mannix & Wilson, 95 Mont. 273, 26 Pac. (2d) 370.

The cause is remanded with directions to modify the decree in the respects herein pointed out and as thus modified it will stand affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE CASTLES and the HONORABLE EUGENE B. FOOT, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, concur.

MR. JUSTICE ADAIR:

I dissent. In my opinion this court's opinion and decision on the appeal in Woodward v. Perkins, 116 Mont. 46, 147 Pac. (2d) 1016, is here controlling.