No. 11973

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

WILLIAM McINTOSH, JR., HATTIE E. McINTOSH,
SOREN N. BECK and DONALD P. MURRAY,

Plaintiffs and Appellants,

-vs-

CLIFFORD GRAVELEY,

Defendant and Respondent.

---

Appeal from: District Court of the Third Judicial District,
Honorable Nat Allen, Judge presiding.

Counsel of Record:

For Appellants:

Small, Cummins & Hatch, Helena, Montana.
Floyd O. Small argued, Helena, Montana.

For Respondent:

Loble, Picotte and Loble, Helena, Montana.
Henry Loble and Peter Pauly argued, Helena, Montana.

---

Submitted: February 18, 1972

Decided: MAR 2 3 1972

Filed: MAR 2 3 1972

Thomas J. Kearney
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This is a suit involving defendant's right to use certain waters of Spring Gulch, a tributary of Ophir Creek, in Powell County for irrigating a tract of land in an adjacent drainage and to change the point of diversion of such waters. The district court of Powell County, the Hon. Nat Allen, district judge presiding without a jury, entered a judgment of dismissal of plaintiffs' claims. From this final judgment, plaintiffs appeal.

The findings of fact of the district court in the instant case set forth the salient facts involved in this appeal. Ophir Creek is a stream rising in Powell County which flows in a southerly direction into the Little Blackfoot River near Avon, Montana. Spring Gulch is a tributary of Ophir Creek flowing into it from a northerly direction; it lies within the Ophir Creek drainage. Immediately west and adjacent to the Ophir Creek drainage lies the Three Mile Creek drainage.

The waters of Ophir Creek and its tributaries, including the waters of Spring Gulch, were adjudicated on March 28, 1928 in Quigley et al. v. Victor Gold Mining Company, et al., Cause # 1185 in the district court of Powell County.

Under that decree one James McGilvray was decreed the right to use 75 miner's inches of the waters of Spring Gulch with a priority as of March 31, 1911 "on the lands belonging to him as described in his pleadings * * * for domestic and other useful and beneficial purposes". The lands described in his pleadings included lands in the NE 1/4 NE 1/4 of Section 26, Township 11 North, Range 8 West, in Powell County. The district court in the

- 2 -

instant case found, in effect, that such lands were actually in the NE 1/4 SE 1/4 of said section, township and range. A portion of these lands and other lands of McGilvray for which the original appropriation was made, comprising in all not less than 54 acres, are located outside the Ophir Creek drainage and in the Three Mile Creek drainage.

Plaintiffs in this case all claim to be successors in interest to various decreed holders of water rights in Ophir Creek and its tributaries in Quigley v. Victor Gold Mining Company, supra. The district court in the instant case, however, declined to so find as the proof thereof rested entirely upon the unsubstantiated oral testimony of two of the plaintiffs. Thus the nature, extent, and priority of plaintiffs' water rights in Ophir Creek and its tributaries remain unknown.

Defendant, on the other hand, is the acknowledged successor in interest to the lands of McGilvray for which the latter was decreed the right to use 75 miner's inches of water of Spring Gulch with a priority as of March 31, 1911 in Quigley v. Victor Gold Mining Company, supra.

The waters of Spring Gulch decreed to McGilvray, defendant's predecessor, were originally diverted from the west bank of Spring Gulch by means of "the old McGilvray ditch" in a westerly direction across the drainage divide from the Ophir Creek drainage to the adjacent Three Mile Creek drainage for use therein. Any further benefit of the diverted waters was lost to the water users in the Ophir Creek drainage because such waters could not return to the Ophir Creek drainage by percolation,

- 3 -

seepage or otherwise.

Additionally, the waters of Spring Gulch were diverted from the west bank of Spring Gulch by another ditch known as the "Fairview Mine Ditch" which was located downstream from "the old McGilvray ditch" between the latter and the confluence of Spring Gulch and Ophir Creek. These waters of Spring Gulch were conveyed in a westerly direction across a steep hillside to a point above the tailing dump for the Fairview Mine where the "Fairview Mine Ditch" abruptly terminated. These waters were used exclusively to operate a boiler at the Fairview Mine which is located in the Ophir Creek drainage.

Since 1959 defendant has diverted the waters of Spring Gulch decreed to his predecessor McGilvray from a point of diversion on the west bank of Ophir Creek located approximately one-half mile downstream from the confluence of Spring Gulch and Ophir Creek for use on various different tracts of land under his control by means of different ditches and combinations of ditches. During the irrigation season of 1959 and 1960, defendant used a ditch known as the "Ophir-Quigley" or "China" ditch to convey such Spring Gulch waters to lands he owns in the Ophir Creek drainage located near Blackfoot City. In the fall of 1960 and the spring of 1961, defendant and plaintiffs McIntosh constructed the "McIntosh-Graveley" ditch, without protest or objection from the other plaintiffs, for the purpose of carrying the waters of Spring Gulch decreed to defendant's predecessor McGilvray out of the Ophir Creek drainage and into the Three Mile Creek drainage for use therein.

- 4 -

At all times when water was available and needed during the irrigation seasons from 1961 through 1966 and for a portion of the irrigation season in 1967, defendant used an old ditch owned by plaintiffs McIntosh, known as the "McIntosh" ditch in conjunction with the newly constructed "McIntosh-Graveley" ditch to convey the waters of Spring Gulch decreed to defendant's predecessor McGilvray out of the Ophir Creek drainage and into the Three Mile Creek drainage for defendant's use therein.

In the spring of 1968, defendant constructed a ditch known as the "Graveley" ditch originating on the west bank of Ophir Creek just below the point of diversion of the "McIntosh" ditch. The "Graveley" ditch generally parallels the course of the "McIntosh" ditch for some distance, and at a point where the "McIntosh" ditch courses in a southerly direction defendant has placed a siphon under the "McIntosh" ditch which connects the "Graveley" ditch constructed in 1968 to the "McIntosh-Graveley" ditch constructed in 1960 and 1961.

During the irrigation seasons of 1969 and 1970, defendant has used this combination of ditches to convey the waters of Spring Gulch, decreed to his predecessor McGilvray, out of the Ophir Creek drainage and into the Three Mile Creek drainage for defendant's use therein. Defendant proposes to continue the use of these ditches for that purpose.

At all times that defendant has conveyed the waters of Spring Gulch by means of the various diversion works located on the west bank of Ophir Creek downstream from the confluence

of Spring Gulch and Ophir Creek, defendant has diverted and conveyed such waters out of the Ophir Creek drainage for use on lands he owns in the Three Mile Creek drainage. These lands of defendant in the Three Mile Creek drainage are lands other than those acquired from his predecessor McGilvray, for which the original appropriation was made.

The district court also found that the burden of defendant's present use of the waters of Spring Gulch is no greater than the burden of the original use of such waters, and that the water users of Ophir Creek and its tributaries suffered no greater injury or detriment thereby.

The only party to this action with weirs and measuring devices at his respective points of diversion is the defendant. Defendant has one weir and measuring device at the point where Spring Gulch flows into Ophir Creek, and another at his point of diversion on the west bank of Ophir Creek where the "Graveley" ditch is located. The district court found a failure of proof on the part of any of the plaintiffs that defendant is depriving them of any of the waters they claim under the decree in Quigley v. Victor Gold Mining Company, supra.

However, the district found that there are accretions to the flow of Spring Gulch below the original point of diversion of the Spring Gulch waters decreed to defendant's predecessor McGilvray. The district court found that defendant was not entitled to these accretions. Accordingly, the district court ordered defendant to install a weir or measuring device at the

- 6 -

original point of diversion.

The district court also found that the plaintiffs did not object to defendant's use of the waters of Spring Gulch, heretofore described, until the filing of the instant suit on December 3, 1969. The district court found that this course of conduct on the part of plaintiffs induced defendant to expend substantial sums of money in improving his diversion works. From this the district court concluded that the principle of equitable estoppel barred assertion of any claims that plaintiffs might otherwise have in the instant suit.

The instant suit was tried to the district court without a jury in July 1970. After plaintiffs rested, defendant moved for a judgment of dismissal with prejudice under Rule 41(b) of the Montana Rules of Civil Procedure, which the district court granted on the basis of its findings of fact and conclusions of law. The judgment was in favor of defendant denying all claims for relief of the plaintiffs, but required defendant to install a measuring device at the original point of diversion of the McGilvray appropriation so as not to benefit from downstream accretions in Spring Gulch to which defendant was not entitled. Plaintiffs now appeal from this judgment.

The issues upon appeal can be summarized in this manner: (1) sufficiency of the evidence to support the findings of fact and judgment; (2) whether defendant had the right to divert the waters of Spring Gulch into the adjacent Three Mile Creek drainage for use therein; (3) whether defendant had the right to

change the point of diversion of the Spring Gulch waters. In addition to these issues posed by plaintiffs, defendant raises the further issue as to whether estoppel and laches bar plaintiffs' claims in any event.

Directing our attention to the first issue, we note extensive exceptions by the plaintiffs to the district court's findings of fact which are incapable of complete summarization. However, the gist of plaintiffs' principal contentions in this regard can be summarized in this manner: (1) the uncontradicted evidence shows that McGilvray, defendant's predecessor, never attempted to convey the waters of Spring Gulch into the Three Creek Mile/drainage for use on his lands there, nor was he ever decreed any right to do so under the decree in Quigley v. Victor Gold Mining Company, supra; (2) any diversion of the waters of Spring Gulch by defendant to the Three Mile Creek drainage for use on his lands there was permissive only during times when plaintiffs had no need or use for such waters; (3) defendant's change in the point of diversion saddled plaintiffs with an increased burden in exercising their water rights to their damage and detriment.

At the outset we note that the decree in Quigley v. Gold Victor/Mining Company, supra, grants to defendant's predecessor McGilvray certain rights to the waters of Spring Gulch for use on certain described lands owned by him, some of which lie in the Ophir Creek drainage and some of which lie in the Three Mile Creek drainage. This decreed water right is based on an appropriation as of March 31, 1911. The appropriation and use of the waters of Spring Gulch under the decree is for irrigation of

- 8 -

the entire tract of land owned by McGilvray both in the Ophir

Creek drainage and the Three Mile Creek drainage, and is not

limited to any particular parcel of land owned by him. The

conclusion is inescapable that the appropriation and decreed

water right of McGilvray covered those described parcels of

land owned by him in the Three Mile Creek drainage, as well as

those located in the Ophir Creek drainage.

Plaintiffs sought to overcome the foregoing by testimon-

ial evidence tending to prove that McGilvray did not own any

land in the Three Mile Creek drainage as of the date of the ap-

propriation, and that he never attempted to divert or use Spring

Gulch waters on any lands in the Three Mile Creek drainage. Such

collateral attack and attempted relitigation of matters concluded

in the decree in Quigley v. Victor Gold Mining Company, supra,

is not permissible. That decree and the issues litigated and

determined therein are res judicata and binding on the parties

in the instant suit, all of whom claim their respective rights

herein through predecessor parties in that earlier litigation.

Brennan v. Jones, 101 Mont. 550, 55 P.2d 697; Missoula Light &

Water Co. v. Hughes, 106 Mont. 355, 77 P.2d 1041.

Plaintiffs cite three Montana cases for the proposition

that where a decree does not specifically authorize an appro-

priation to remove water to an alien watershed permanently, the

appropriator has no right to do so. Spokane Ranch & Water Co.

v. Beatty, 37 Mont. 342, 96 P. 727; Galiger v. McNulty, 80 Mont.

339, 260 P. 401; Quigley v. McIntosh, 110 Mont. 495, 103 P.2d

1067.

Spokane Ranch & Water Co. contains this language, but suggests this proposition only in the context of the facts of that case, which are far different from the facts here. There, the court held that the district judge did not intend to grant the right to release the water permanently to an alien watershed with regard to agricultural water rights or the same language would have been used there as in the case of a placer mining water right where such right was granted. In the instant case the contrary intention appears, as the right to use the water on land in the foreign drainage is spelled out in the decree.

Galiger simply stands for the proposition that waters primarily belong in the watershed of their origin, if there is land therein which requires irrigation.

Quigley stands for the proposition that a water user who has been decreed the right to use a specific amount of water on given lands cannot subsequently extend the use of that water to additional lands not under actual or contemplated irrigation at the time the right was decreed, to the injury of subsequent appropriators. However, this principle is not germane to the instant case, as no injury to subsequent appropriators in the drainage of origin is possible where permanent diversion of the waters into another watershed was decreed in the original appropriation.

On a number of occasions this Court has recognized that the waters of a stream located in one drainage can be appropriated for irrigation purposes or other beneficial uses in

another drainage. Spokane Ranch & Water Co. v. Beatty, supra; Carlson v. City of Helena, 43 Mont. 1, 114 P. 110; Lokowich v. City of Helena, 46 Mont. 575, 129 P. 1063; Galiger v. McNulty, supra; Thrasher v. Mannix & Wilson, 95 Mont. 273, 26 P.2d 370; State ex rel. Mungas v. Dist. Ct., 102 Mont. 533, 59 P.2d 71. Where, as here, the water user in the drainage of origin is not injured, he has no cause to complain if the water is devoted to beneficial use in a foreign drainage.

Plaintiffs' contention that the evidence shows that any diversion of the waters of Spring Gulch by defendant into the Three Mile Creek drainage for use on his lands there was with the permission of plaintiffs during times when plaintiffs had no need or use for the waters is without merit. The evidence simply does not substantiate this contention. The most it shows is a permissive user of a ditch for a period of time to carry his water. Ditch rights and water rights are two separate rights and in no sense synonymous.

Plaintiffs finally contend that the change in the point of diversion of the waters from the west bank of Spring Gulch where the original appropriation was made to the west bank of Ophir Creek constituted an increased burden on them as water users in Ophir Creek. The only testimony in the record support- ing this is their testimony that they would be saddled with their proportionate share of the expense of a water commissioner to distribute the waters in accordance with their respective rights. If a weir and measuring device is installed at the original point of diversion to measure the water to which defendant is entitled,

- 11 -

as well as continuing the existing measuring device at defendant's present point of diversion as required by the district court, it is difficult to see why a water commissioner is any more necessary than if the water were taken from the original point of diversion. Aside from this, the expense of employing a water commissioner does not constitute the burden or detriment required to be proven by plaintiffs in order to prevail.

We have examined the other contentions of plaintiffs concerning sufficiency of the evidence and find the facts either supported by the evidence or immaterial to determination of this appeal.

The second issue raised by plaintiffs upon appeal is whether defendant had the right to divert the waters of Spring Gulch into the adjacent drainage for use on his lands there. It is important to note that defendant is using the water for irrigation of lands in the Three Mile Creek drainage which he subsequently acquired from persons other than the original appropriators and which in no sense were the lands for which the original appropriation was made. It should also be noted that there is no claim of abandonment of the original appropriation in the instant case.

Having heretofore found that defendant's predecessor was granted the right to convey the waters of Spring Gulch across the drainage divide for use on his lands located there and described in his pleadings under the decree in Quigley v. Victor Gold Mining Company, supra, and it being admitted that defendant

- 12 -

here succeeded to those rights, the only remaining question is whether defendant can use these waters on his other and different lands located in the Three Mile Creek drainage.

This question has heretofore been answered affirmatively in a similar Montana case, Thrasher v. Mannix & Wilson, 95 Mont. 273, 277, 26 P.2d 370. There, the argument was made that the holder of a water right entitling him to the use of such waters on his lands in an alien watershed, could not bring additional lands in the alien watershed under irrigation with the waters diverted from the watershed of their origin. This Court dismissed that contention in these words:

> " * * * It appears from the record that these new lands are outside the watershed of Gold Creek. From the testimony it appears that the waters diverted under this particular right were, and the court found and so adjudged in the former decree, the waters thereby appropriated, and had been and could continue to be, used without the watershed of Gold Creek. In view of these facts no injury could result to these plaintiffs from this change of use, for the use both before and after was for the same purpose; there being no opportunity for any of the plaintiffs to enjoy any benefits from percolating waters resulting from irrigation under this right inuring to them, as their lands are either all within the watershed of Gold Creek, or, if without, at a higher level than the lands of the defendant." (Emphasis supplied.)

Such is the situation here. Plaintiffs could not further benefit from the waters diverted to the Three Mile Creek drainage under the original appropriation, so they are not burdened or damaged in any way from irrigation of other lands in that drainage.

The next issue is whether defendant had the right to

- 13 -

change the point of diversion of the Spring Gulch waters.

The controlling statute is section 89-803, R.C.M. 1947, which provides:

> "The person entitled to the use of water may change the place of diversion, if others are not thereby injured, and may extend the ditch, flume, pipe, or aqueduct, by which the diversion is made, to any place other than where the first use was made, and may use the water for other purposes than that for which it was originally appropriated."

The burden of proof of injury as the result of a change in the point of diversion is upon those who allege injury, here the plaintiffs. Forrester v. Rock Island Oil & Refining Co., Inc., 133 Mont. 333, 323 P.2d 597, and cases therein cited. Here, plaintiffs have no adequate measuring devices to determine with any degree of accuracy the amount of water they are receiving under their respective rights. It is necessary for them to prove that they are being deprived of waters to which they are lawfully entitled. The only proof of this was in regard to the accretions to the Spring Gulch waters below the point of original diversion. The district court remedied this by attaching a condition to its decree requiring defendant to install a measuring device at the original point of diversion and divert no greater amount of water at the changed diversion point on the west bank of Ophir Creek. There is a complete failure of proof on the part of plaintiffs of any other damage.

Finally, as to the issues of laches and estoppel, we deem it unnecessary to discuss these issues in this opinion; neither has been raised as an issue upon appeal by plaintiffs, appellants here. In view of our holdings herein defendant is

- 14 -

entitled to prevail irrespective of determination of these issues.

The judgment of the district court is affirmed.

_____
Associate Justice

We concur:

_____
Chief Justice

_____

_____
Associate Justices

_____
Hon. Jack Shanstrom, District
Judge, sitting in place of Mr.
Justice Wesley Castles.