No. 12598

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

JOB THOMPSON, et al.,

Plaintiffs and Appellants,

-vs-

WILLIAM HARVEY, et al.,

Defendants and Respondents.

---

Appeal from:  District Court of the First Judicial District,
Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

For Appellants:

Jardine and McCarthy, Whitehall, Montana
John H. Jardine argued, Whitehall, Montana
Glenn F. Kenney argued, Helena, Montana

For Respondents:

Small, Cummins and Hatch, Helena, Montana
Robert T. Cummins argued, Helena, Montana
Harrison, Loendorf and Poston, Helena, Montana
James T. Harrison, Jr. argued, Helena, Montana

---

Submitted:  February 26, 1974

Decided **MAR 13 1974**

Filed: **MAR 13 1974**

*Thomas J. Kearney* Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a judgment of the district court of Broadwater County denying a petition for an order authorizing a change in point of diversion on Deep Creek in Broadwater County.

This action was brought under the 1891 decree adjudicating the waters of Deep Creek and bears the title of the original parties. The actual petitioners are Gerald F. Olsen and L. Bonita Olsen. The actual protesters are Robert Hoppe, John Plymale, Frank McArthur, Maurice Hunsacker, Martin Clarke, John Walter, Herb Hoppe, Lou Nichols, Ray Goodwin, Hubert White, Norman Parmalee and the Montana State Department of Natural Resources and Conservation. The petitioners are the present owners by purchase of a 75 inch water right with a 4th priority on Deep Creek. The protesters are, with the exception of the Department of Natural Resources, either the owners of water rights subordinate to the petitioners or contract purchasers of water from the Missouri-Broadwater Ditch Company. The Department of Natural Resources is the marketing contractor for the Missouri-Broadwater Ditch Company.

The 75 inch right owned by petitioner was purchased from Ernest Grimm who had used it for the last 10 years in conjunction with a 50 inch right to irrigate approximately 80 acres. The 80 acres and the point of diversion currently being used in the exercise of these two water rights are located downstream on Deep Creek from the point at which the Missouri-Broadwater Canal intercepts the creek.

The petitioners propose to move the point of diversion for the 75 inch right upstream on Deep Creek approximately 4-1/2 miles. The 75 inch right will be used to irrigate approximately 80 acres out of 308 acres of land belonging to the petitioners. This move would place the point of diversion some 3 miles above

the intersection of Deep Creek and the Missouri-Broadwater Canal.

The objectors are almost all located upstream from the intersection of Deep Creek and the Missouri-Broadwater Canal. Most are also contract purchasers of water from the canal. Because of the topography of the area it is not feasible to transport water from the canal directly to their land. This problem has been solved by diverting the natural flow of Deep Creek for use on the objectors' lands and then replacing the water so taken with water from the canal which is placed in the stream channel at the point the canal crosses the stream. This system has been in use since the canal was completed in 1939. This exchange is specifically allowed under section 89-806, R.C.M. 1947. It provides the only practical method by which those individuals with inferior water rights, whose land is located above the canal, can obtain the water needed for irrigation. This water is obtained without prejudice to the superior rights located downstream since the water from the canal is available for their use. The water commissioner testified that it was his duty as an officer of the court to make the exchange.

The transfer of the point of diversion of petitioners' 75 inch right to a point above the canal will mean that it cannot be replaced by water diverted from the canal. It will also mean that at least an additional 80 acres of land will be placed under irrigation. It also means that the 50 inch right on the Grimm place below will be used a much longer period of time on the 80 acres there. These factors will reduce the amount of water available to those individuals whose rights are inferior to the 4th right owned by petitioner.

The controlling issues on this appeal are two in number: First, would the proposed change in point of diversion and use of the water right injure other parties? Second, did the objectors

- 3 -

meet their burden of proving injury if the change in point of diversion were allowed? We will consider these issues together.

The nature and extent of the petitioners' right to a change in point of diversion is set out in section 89-803, R.C.M. 1947, which provides:

> "The person entitled to the use of water may change the place of diversion, if others are not thereby injured, and may extend the ditch, flume, pipe, or aqueduct, by which the diversion is made, to any place other than where the first use was made, and may use the water for other purposes than that for which it was originally appropriated."

The limitation on the petitioners' right to make the change sought is clear. They may not make the change if injury to others is shown to be a result of such change. The burden of showing such injury is on those who claim to be adversely affected. McIntosh v. Graveley, 159 Mont. 72, 495 P.2d 186; Thrasher v. Mannix & Wilson, 95 Mont. 273, 26 P.2d 370; Lokowich v. City of Helena, 46 Mont. 575, 129 P. 1063; Hansen v. Larsen, 44 Mont. 350, 120 P. 229.

To meet this burden of proof the objectors introduced uncontroverted testimony indicating that if the change sought by petitioners was allowed it would render impossible the program of exchanging canal water for the natural flow of the stream thus reducing by approximately 20% the amount of water available for those with inferior rights located above the canal. It was also uncontroverted that the change in point of diversion would lead to an increased use of water because of the increase in acreage to be irrigated and the time of use. That a decrease in available water and increase in use of the water that is available represents an injury to those individuals who will be deprived of water as a result is indisputable.

The petitioners do not deny that the protesters will be

- 4 -

injured as a result of change but assert instead that the protesters do not have the requisite status to object to the change because of both unclean hands and the misuse of the channel of Deep Creek. Petitioners premise these assertions of impropriety on exchange of canal water for stream water which is removed at points above the canal. This procedure is affirmatively sanctioned by the laws of Montana. Section 89-806, R.C.M. 1947, provides:

> "Any person, persons, association or corporation, owning or in possession of lands susceptible of irrigation from any stream, the waters of which are so diminished by prior appropriations that a sufficient amount of water for the irrigation of their lands cannot be obtained from the natural flow of the stream, who shall construct a reservoir, or shall purchase or lease water from a reservoir owned by the state water conservation board of the state of Montana, or another, or shall otherwise acquire an interest in such reservoir, or in water stored therein, which is so located that because of natural or other obstacles the water impounded therein cannot be conducted to the lands which they desire to irrigate, may, provided the stored water can be discharged into the stream in such a manner that it can be used beneficially by prior appropriators, divert the natural flow of the stream for the irrigation of their lands in lieu of an equal amount of stored water, provided, however, that such exchange can be made without injury to said prior appropriators."

The protesters' acts in taking water from the natural flow of Deep Creek and then replacing it with canal water for the benefit of prior appropriators were clearly within the acts authorized by this section. Accordingly, these acts do not bar them from objecting to the proposed change in point of diversion.

The petitioners also urge the proposition that the district court erred in failing to determine the extent and duration of the water rights owned by Grimm and by petitioners. Since these matters were not placed in issue by the petitioners' petition for order authorizing a change in point of diversion, it follows that the district court did not err by failing to make such determinations. Similarly petitioners' remaining claim that the district

- 5 -

court erred in failing to determine injuries resulting to petitioners from exchange of stored waters for natural waters relates to matters which were not before the trial court.

Protesters' motion for attorneys fees as for an appeal without substantial or reasonable grounds under Rule 32, M.R. App.Civ.P., is denied and the judgment of the district court is hereby affirmed.

_____
                                                              Justice

We concur:

_____

_____

_____
Justices

Mr. Chief Justice James T. Harrison did not participate in this cause.

- 6 -